UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| FELIPE HURTADO, on behalf of himself and all others similarly-situated,<br><br>      Plaintiff,<br><br>  -against-<br><br>183 FOOD MARKET CORP. d/b/a FOOD UNIVERSE, and 2358 FOOD CORP., and ROBERTO ESPINAL, individually, and 183 MEAT CORP., and 2358 MEAT CORP., and SERGIO FERNANDEZ, individually,<br><br>      Defendants. | **Docket No.: 20-cv-7988 (KPF)** |

### MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S MOTION FOR PRELIMINARY APPROVAL OF THE CLASS ACTION SETTLEMENT

**STEVENSON MARINO LLP**

Jeffrey R. Maguire
Justin R. Marino
J.R. Stevenson
75 Maiden Lane, Suite 402
New York, New York 10038
*Attorneys for Plaintiff*

**TABLE OF CONTENTS**

I.      PRELIMINARY STATEMENT ....................................................................1

II.     BACKGROUND ........................................................................................3

        A.    Procedural History, Plaintiff's Allegations, Discovery, and Mediation ...........3

        B.    Settlement Procedure...........................................................................5

        C.    The Proposed Classes ..........................................................................7

        D.    Summary of the Monetary Settlement Terms...........................................7

III.    ANALYSIS ...............................................................................................11

        A.    The Court Should Grant Preliminary Approval of the Proposed
              Settlement ......................................................................................11

              1.    The legal standards for preliminary approval ...........................11

              2.    The proposed settlement is fair, reasonable, and adequate
                    considering the complexity, expense, and likely duration of the
                    litigation, the stage of the proceedings, and discovery
                    completed ................................................................................15

                    a.    Complexity, expense, and likely duration of the litigation. ...........15

                    b.    Stage of proceedings and amount of discovery completed...........17

              3.    The proposed settlement is fair, reasonable, and adequate given the
                    risks of establishing liability and damages, and maintaining the class
                    through trial.............................................................................18

              4.    Maintaining the FLSA collective and Rule 23 Class through trial
                    would not be guaranteed. ..........................................................19

              5.    The Maximum Settlement Amount is substantial, even in light of the
                    best possible recovery and attendant risks of litigation, and the

"reasonableness of the proposed settlement" factors support approval of the proposed settlement. .......................................................19

**B.     Certification Under Rule 23 is Warranted.** .......................................21

    1.     Numerosity.......................................................................................22

    2.     Commonality....................................................................................23

    3.     Typicality .........................................................................................23

    4.     Adequacy of class representative ....................................................24

    5.     Rule 23(a)'s "implied" ascertainability requirement ......................24

    6.     Certification under Rule 23(b)(3) is satisfied .................................25

    7.     Plaintiff's counsel should be appointed as Class Counsel ..............26

**C.     The Proposed Notice is Appropriate** ..................................................27

**IV.     CONCLUSION** ...........................................................................................28

# TABLE OF AUTHORITIES

**Cases**                                                                                                           **Page(s)**

*Amchem Prods., Inc. v. Windsor,*
   521 U.S. 591 (1997)..................................................................................... 21, 25

*Bravo v. Palm West Corp.,*
   2015 WL 5826715 (S.D.N.Y. Sept. 30, 2015)........................................................ 12

*Cheeks v. Freeport Pancake House, Inc.,*
   796 F.3d 199 (2d Cir. 2015)........................................................................ 11

*Chen v. XpresSpa at Terminal 4 JFK LLC,*
   2019 WL 5792315, at *2 (E.D.N.Y. Aug. 20, 2019)................................................ 13

*City of Detroit v. Grinnell Corp.,*
   495 F.2d 448 (2d Cir. 1974)...................................................................... *passim*

*Clark v. Ecolab, Inc.,*
   2009 WL 6615729, at *3 (S.D.N.Y. Nov. 27, 2009)............................................... 12

*Clem v. Keybank, N.A.,*
   2014 WL 1265909, at *1 (S.D.N.Y. Mar. 27, 2014) .............................................. 12

*Consol. Rail Corp. v. Town of Hyde Park,*
   47 F.3d 473 (2d Cir. 1995)........................................................................ 23

*Deen v. New Sch. Univ.,*
   2008 WL 331366 (S.D.N.Y. Feb. 4, 2008).......................................................... 22

*Denney v. Deutsche Bank AG,*
   443 F.3d 253 (2d Cir. 2006)....................................................................... 24

*Dover v. British Airways, PLC (UK),*
   323 F. Supp. 3d 338 (E.D.N.Y. 2018) ............................................................. 13

*Dunnigan v. Metro. Life. Ins. Co.,*
   214 F.R.D. 125 (S.D.N.Y. 2003) .................................................................. 25

*Garcia v. Pancho Villa's of Huntington Vill., Inc.,*
   2012 WL 5305694 (E.D.N.Y. Oct. 4, 2012)......................................................... 15

*Gay v. Tri-Wire Eng'g Solutions, Inc.,*
   2014 WL 28640 (E.D.N.Y. Jan. 2, 2014) .......................................................... 14

*Gen. Tel. Co. of Sw. v. Falcon*,
    457 U.S. 147 (1982) ............................................................................................. 23

*Gortat v. Capala Bros., Inc.*,
    2012 WL 1116495 (E.D.N.Y. Apr. 3, 2012) .......................................................... 22

*Granada Invest., Inc. v. DWG Corp.*,
    962 F.2d 1203 (6th Cir. 1992) ............................................................................... 18

*Green v. Wolf Corp.*,
    406 F.2d 291 (2d Cir. 1968) ................................................................................... 26

*Hamelin v. Faxton–St. Luke's Healthcare*,
    274 F.R.D. 385 (N.D.N.Y. 2011) ........................................................................... 24

*Huerta v. West 62 Operating LLC*,
    2018 WL 10601810, at *2 (S.D.N.Y. Jan. 11, 2018) ............................................. 13

*In re Austrian & German Bank Holocaust Litig.*,
    80 F. Supp. 2d 164 (S.D.N.Y. 2000) ......................................................... 15, 17, 19

*In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prods. Liab. Litig.*,
    55 F.3d 768 (3d Cir. 1995) ..................................................................................... 12

*In re Nat'l Footbal League Players Concussion Injury Litig.*,
    821 F.3d 410 (3d Cir. 2016) ................................................................................... 21

*In re Penthouse Executive Club Comp. Litig.*,
    2013 WL 1828598 (S.D.N.Y. Apr. 30, 2013) ....................................................... 12

*In re Traffic Exec. Ass'n*,
    627 F.2d 631 (2d Cir. 1980) ................................................................................... 13

*In re Union Carbide Corp. Consumer Prods. Bus. Sec. Litig.*,
    718 F. Supp. 1099 (S.D.N.Y. 1989) ....................................................................... 20

*In re Visa Check/MasterMoney Antitrust Litig.*,
    280 F.3d 124 (2d Cir. 2001) ................................................................................... 25

*In re Warfarin Sodium Antitrust Litig.*,
    391 F.3d 516 (3d Cir. 2004) ................................................................................... 17

*Joel A. v. Giuliani*,
    218 F.3d 132 (2d Cir. 2000) ................................................................................... 21

*Khait v. Whirlpool Corp.*,
  2009 WL 6490085 (E.D.N.Y. Oct. 1, 2009)..........................................................14

*Landin v. UBS Servs. USA LLC*,
  2012 WL 488284 (S.D.N.Y. Feb. 14, 2012)..........................................................11

*Marisol A. v. Giuliani*,
  126 F.3d 372 (2d Cir. 1997)................................................................................23

*Massiah v. Metroplus Health Plan, Inc.*,
  2012 WL 5874655 (E.D.N.Y. Nov. 20, 2012)......................................................14

*Maywalt v. Parker & Parsley Petroleum Co.*,
  67 F.3d 1072 (2d Cir. 1995)...............................................................................11

*Newman v. Stein*,
  464 F.2d 689 (2d Cir. 1972)...............................................................................19

*Oppenlander v. Standard Oil Co.*,
  64 F.R.D. 597 (D. Colo. 1974). ..........................................................................18

*Parker v. City of New York*,
  2017 WL 6375736 (E.D.N.Y. Dec. 11, 2017) ......................................................13

*Priddy v. Edelman*,
  883 F.2d 438 (6th Cir. 1989) ..............................................................................18

*Republic Nat'l Life Ins. Co. v. Beasley*,
  73 F.R.D. 658 (S.D.N.Y. 1970)...........................................................................19

*Reyes v. Buddha-Bar NYC*,
  2009 WL 5841177 (S.D.N.Y. May 28, 2009) ................................................17, 18

*Robidoux v. Celani*,
  987 F.2d 931 (2d Cir. 1993)..........................................................................23, 24

*Rossini v. Ogilvy & Mather, Inc.*,
  798 F.2d 590 (2d Cir. 1986)...............................................................................25

*Saldana v. Middletown Car-G-Cam Uni Corp.*,
  2015 WL 12591678 (S.D.N.Y. Sept. 23, 2015).....................................................12

*Sanders v. CJS Solutions Grp., LLC*,
  2018 WL 620492, at *3 (S.D.N.Y. Jan. 30, 2018).................................................12

*Santo Sierra & Alexander Valentin v. Spring Scaffolding LLC*,
  2015 WL 10934779 (E.D.N.Y. May 8, 2015) ................................................................. *passim*

*Saylor v. Lindsley*,
  456 F.2d 896 (2d Cir. 1972)................................................................................................ 20

*Stieberger v. Sullivan*,
  792 F. Supp. 1376 (S.D.N.Y. 1992)..................................................................................... 16

*Stinson v. City of New York*,
  282 F.R.D. 360 (S.D.N.Y.2012) ........................................................................................ 25

*Strougo v. Bassini*,
  258 F. Supp. 2d 254 (S.D.N.Y. 2003)............................................................................ 18, 19

*Sukhnandan v. Royal Health Care of Long Island LLC*,
  2013 WL 4734818 (S.D.N.Y. Sept. 3, 2012)...................................................................... 12

*Taylor v. Delta-Sonic Car Wash Sys., Inc.*,
  2017 WL 436045 (W.D.N.Y. Jan. 31, 2017) ...................................................................... 22

*Toure v. Amerigroup Corp.*,
  2012 WL 1432302 (E.D.N.Y. Apr. 20, 2012) ..................................................................... 13

*Valerio v. RNC Indus., LLC*,
  314 F.R.D. 61 (E.D.N.Y. 2016)........................................................................................... 22

*Vivaldo v. United Talmudical Acad. of Kiryas Joel, Inc.*,
  2015 WL 4922961 (S.D.N.Y. Aug. 18, 2015).................................................................... 24

*Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*,
  396 F.3d 96 (2d Cir. 2005)............................................................................................ 11, 12

*Westerfield v. Washington Mut. Bank*,
  2009 WL 6490084 (E.D.N.Y. June 26, 2009) .................................................................... 13

*Wolinsky v. Scholastic, Inc.*,
  900 F. Supp. 2d 332 (S.D.N.Y. 2012)............................................................................. 2, 15

**Rules and Statutes**

29 U.S.C. § 216(b) .................................................................................................. *passim*

Fed. R. Civ. P. 23 .................................................................................................... *passim*

**Treatises**

*Newberg on Class Actions* (4th Ed. 2002) ............................................................... 13, 21

## I.   **PRELIMINARY STATEMENT**

Subject to this Court's approval, this wage and hour collective and class action brought pursuant to the Fair Labor Standards Act ("FLSA") and the New York Labor Law ("NYLL") is settled for the maximum amount of $750,000.00. The proposed settlement resolves the claims of the Named Plaintiff, Felipe Hurtado ("Named Plaintiff" or "Hurtado"), the opt-in Plaintiff, Leonardo Pena Adames ("Opt-in Plaintiff" or "Pena" and referred to together with Named Plaintiff as "Plaintiffs"), and the claims of those alleged by Plaintiffs to be similarly-situated putative class and collective members against Defendants, 183 Food Market, Corp. d/b/a Food Universe, 2358 Food Corp., and Roberto Espinal (collectively as "Espinal Defendants"), and 183 Meat Corp., 2358 Meat Corp., and Sergio Fernandez (collectively as "Fernandez Defendants," and together with Espinal Defendants as "Defendants"). The Defendants and the Plaintiffs are collectively referred to herein as the "Parties").  By this motion, including all supporting documents, Plaintiffs respectfully submit that the proposed settlement satisfies all of the criteria for preliminary settlement approval and request that the Court:

(1)     preliminarily approve the proposed Settlement Agreement, annexed to the Declaration of Jeffrey R. Maguire, Esq. ("Maguire Declaration") as **Exhibit 1**, the terms of which are described herein and in the Maguire Declaration;

(2)     approve the proposed Notice of Proposed Class and Collective Action Settlement ("Notice"), attached to the Maguire Declaration as **Exhibit 2**, the proposed Claim Form and Release ("Claim Form"), attached to the Maguire Declaration as **Exhibit 3**, and approve the claims procedure detailed in the Settlement Agreement;

(3)     certify, for settlement purposes only, a settlement class with overlapping state claims under Federal Rule of Civil Procedure ("Fed. R. Civ. P." or "Rule(s)") 23(a) and (b)(3), and federal claims under 29 U.S.C. § 216(b) with individual members jointly referred to as "Class Members," and the class referred to as "the Class," and defined as:

<u>Rule 23 Class</u>

> All individuals employed by Defendants as non-managerial employees, who at any time during the period of September 25, 2017 to January 20, 2021, worked at the Food Universe supermarkets located at 60 West 183rd Street, Bronx, New York and 2358 University Avenue, Bronx, New York 10468;

<u>FLSA § 216(b) Collective</u>

> All individuals employed by Defendants as non-managerial employees, who at any time during the period of September 25, 2017 to January 20, 2021, worked at the Food Universe supermarkets located at 60 West 183rd Street, Bronx, New York and 2358 University Avenue, Bronx, New York 10468, and who timely submit a Claim Form, thereby opting into the settlement  and, in so doing, releasing their FLSA claims.

(4)      appoint Named Plaintiff Felipe Hurtado as the Class Representative;

(5)      appoint Stevenson Marino LLP ("the Firm" or "Stevenson Marino"), as Class Counsel;

(6)      appoint Arden Claims Service LLC ("Arden") as the Claims Administrator for this settlement;

(7)      approve the Parties' proposed schedule for the filing of a motion for final approval, for class members to submit Claim Forms, opt out, or file objections to the proposed settlement, and schedule a Fairness Hearing; and

(8)      enter the Proposed Order attached as **Exhibit 4** to the Maguire Declaration.

As discussed more fully below, because the settlement is fair, reasonable, and adequate, and, for the purposes of settlement only, otherwise satisfies the requirements of Rule 23(e), 29 U.S.C. § 216(b), *City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 463 (2d Cir. 1974), *abrogated on other grounds*, *Goldberger v. Integrated Res., Inc.*, 209 F.3d 43 (2d Cir. 2000), and *Wolinsky v. Scholastic, Inc.*, 900 F. Supp. 2d 332, 335 (S.D.N.Y. 2012), the Court should preliminarily approve it.

II.     **BACKGROUND**

A.      **Procedural History, Plaintiff's Allegations, Discovery, and Mediation**

On September 25, 2020, Named Plaintiff filed a Complaint in this Court asserting FLSA and NYLL claims for unpaid overtime and other statutory damages, on behalf of himself and all others similarly situated pursuant to 29 U.S.C. § 216(b) and Federal Rule of Civil Procedure 23. *See* Dkt. No. 1. On that same day, Pena opted into the action by filing a consent to join form with this Court. *See* Dkt. No. 5. On November 11, 2020, Defendants 183 Food Market Corp. and Robert Espinal filed an Answer, denying all claims asserted by Plaintiffs. *See* Dkt. No. 18.

On December 15, 2021, Plaintiffs and Defendants 183 Food Market Corp. and Robert Espinal were assigned a mediator to assist the parties in resolution of the matter. *See* Maguire Decl., ¶ 4. The parties subsequently participated in a call with a member of the Southern District's mediation panel, but mediation efforts ultimately proved unsuccessful. *See* Maguire Decl., ¶ 4. On February 3, 2021, Plaintiffs filed a request for an extension of time to either file a motion for conditional certification of a collective action pursuant to 29 U.S.C. § 216(b), or a stipulation between the parties agreeing to conditional certification, which the Court granted on February 4, 2021. *See* Dkt. No. 21.

During the parties' discussions concerning agreeing to conditional certification, Plaintiffs were informed that Defendant Espinal sold the supermarket that was subject to this litigation, and as a result, stipulating to conditional certification became impractical. *See* Maguire Decl., ¶ 5. The Espinal Defendants provided Plaintiffs with documents concerning the sale. *See* Maguire Decl., ¶ 5.  On February 17, 2021, Plaintiffs filed a stipulation between the parties permitting Plaintiffs to file an Amended Complaint, which the Court So-Ordered on that same day. *See* Dkt. No. 24. On February 24, 2021, Plaintiffs filed their Amended Complaint, adding four additional defendants to

3

the action, 2358 Food Corp., 183 Meat Corp., 2358 Meat Corp., and Sergio Fernandez. *See* Dkt. No. 28.

On March 26, 2021, the Espinal Defendants filed their Answer to the Amended Complaint. *See* Dkt. No. 43. On April 28, 2021, the Fernandez Defendants filed their Answer to the Amended Complaint. *See* Dkt. No. 55. On May 17, 2021, the Parties filed a Proposed Stipulation and Order for conditional certification of a collective action, along with a Proposed FLSA Notice. *See* Dkt. No. 58. On May 18, 2021, the Court So-Ordered the Parties' stipulation, authorizing Plaintiffs to send the FLSA Notice to the putative members of the agreed-upon collective action. *See* Dkt. No. 60.

Prior to Plaintiffs sending the FLSA Notice pursuant to the Court's Order, the Parties informed the Court on June 1, 2021, that they had agreed to participate in private mediation to discuss resolution on a class and collective basis pursuant to Federal Rule of Civil Procedure 23 ("Rule 23") and 29 U.S.C. § 216(b). *See* Dkt. No. 63. On July 12, 2021, the Parties participated in mediation with Martin Scheinman, Esq., a mediator with extensive experience with employment matters including wage and hour collective and class actions. *See* Maguire Decl., ¶ 7. During the mediation, the Parties analyzed the time records that contained the hours worked by putative Class Members during the time period in question, enabling the Parties to evaluate the potential damages in question for all Class Members. *See* Maguire Decl., ¶ 7. Through the assistance of the mediator, the Parties were able to reach an agreement in principle to resolve this action on a class/collective-wide basis. *See* Maguire Decl., ¶ 7.

Specifically, the Parties agreed to settle the alleged claims of the putative class, for the total amount of $750,000.00 ("Settlement Amount"), inclusive of attorneys' fees, expenses, claims administrator fees, a $10,000 reserve fund for employer-side payroll taxes, and service awards.

*See* Maguire Decl., ¶ 8; *see generally* **Exhibit 1**, Settlement Agreement. As explained below, Plaintiffs and their counsel are satisfied that the portion of the Settlement Amount that will be distributed to Class Members after attorneys' fees, costs, claims administrator fees, the $10,000 reserve fund for employer-side payroll taxes, and service awards is reasonable. *See* Maguire Decl., ¶ 9.

Throughout the litigation, Named Plaintiff and Opt-in Plaintiff were instrumental in achieving the resolution of this matter in principle. *See* Maguire Decl., ¶ 10. Indeed, Named Plaintiff not only assumed the full risk commensurate with putting his name on the action, but he remained involved in the litigation of this matter throughout and assisted with the pre-litigation investigation, production of records, drafting of the Complaint and Amended Complaint, and participation in mediation preparation and the mediation. *See* Maguire Decl., ¶ 10.

Opt-in Plaintiff Pena additionally remained active in the litigation of the case since its filing, producing documents and providing information for the Complaint and the Amended Complaint. *See* Maguire Decl., ¶ 11. Pena also assisted by providing information that he learned about the sale of the supermarket and change in ownership. *See* Maguire Decl., ¶ 11. Pena also helped counsel by preparing for the mediation. *See* Maguire Decl., ¶ 11. In sum, both Hurtado and Pena provided crucial information and analysis on behalf of the Class Members and only through their participation was the matter able to be resolved on the Class Members' behalf. *See* Maguire Decl., ¶ 11.

**B.**     **Settlement Procedure**

The Parties reduced their agreement to a comprehensive Settlement Agreement. *See* Maguire Decl., ¶ 12; **Exhibit 1**. The Parties also drafted a proposed Notice and Claim Form to be sent to Class Members, advising them of the settlement's material terms and their rights

thereunder. *See* Maguire Decl., ¶ 12. The Notice also explains what steps they must take to claim their share of the Settlement Amount. *See* Maguire Decl., ¶ 12. A true and accurate copy of the proposed Notice and Claim Form to be sent to Class Members is attached to the Maguire Declaration as **Exhibits 2** and **3**, respectively. The Notice and Claim Form are clear, balanced, and easy to understand, and include all material and necessary information, including: (1) information regarding the nature of the lawsuit; (2) explaining why there is a settlement and describing what a class and collective action is; (3) a summary of the substance of the settlement, including the formula to calculate the approximate share of the settlement that each Class Member can expect to receive; (4) the procedure and time period for submitting a Claim Form, objecting to the settlement, and excluding oneself from the settlement; and (5) information regarding the Fairness Hearing. *See* Maguire Decl., ¶ 14. As stated in the Agreement, the Parties have selected Arden Claims Service, LLC ("Arden" or "Claims Administrator") as the claims administrator in this action. More information on this company can be found at the website http://ardenclaims.com. *See* Maguire Decl., ¶ 15. The Notice also discusses the release, the requested attorneys' fees and costs, the service awards, the Claims Administrator's duties and fees, and the method for redistributing any unclaimed funds. *See* Maguire Decl., ¶ 16.

Within fourteen (14) days of the Court's entry of an Order granting the instant motion (the "Preliminary Approval Order"), the Espinal Defendants will provide a finalized Class Member list ("Class List") to Plaintiffs' counsel and to the Claims Administrator. *See* Maguire Decl., ¶ 17. The Claims Administrator will have sixteen (16) days after the receipt of the Class List to mail, via First Class United States Mail, in both English and Spanish, the Court-approved Notice and Claim Forms to all Class Members. *See* Maguire Decl., ¶ 17. Translation of the Notice is necessary as many Class Members, including Named Plaintiff and Opt-in Plaintiff, speak Spanish as their first

language. *See* Maguire Decl., ¶ 17. Class Members will then have sixty (60) days from the date that the Notices are initially mailed to return their Claim Forms, object to, or opt-out of the settlement. *See* Maguire Decl., ¶ 17. To be valid, a Claim Form or an Opt-out Statement must be postmarked or received by the Claims Administrator within sixty (60) days after the initial mailing of Notice to the Class, subject to any good cause reason for delay as outlined in the Settlement Agreement. *See* Maguire Decl., ¶ 17. The Notice also contains instructions and a deadline for Class Members who wish to object to the Settlement Agreement and/or appear at the Fairness Hearing, either with or without counsel. *See* Maguire Decl., ¶ 17; **Exhibit 2**.

### C.     <u>The Proposed Classes</u>

The Parties agree that the proposed overlapping classes consist of approximately 85 individuals that Plaintiffs have alleged were employed by the Espinal Defendants as non-managerial employees, who at any time during the period of September 25, 2017 to January 20, 2021, worked at the Food Universe supermarkets located at 60 West 183rd Street, Bronx, New York and 2358 University Avenue, Bronx, New York 10468. *See* Maguire Decl., ¶ 18.

### D.     <u>Summary of the Monetary Settlement Terms</u>

As described above, the Settlement Agreement provides for the creation of a fund of $750,000.00 ("Maximum Settlement Amount"). The Fernandez Defendants will fund the Maximum Settlement Amount into a Qualified Settlement Fund ("QSF") via separate deposits of $40,000.00 to be deposited monthly beginning fifteen (15) days after the Preliminary Approval Order. *See* Maguire Decl., ¶ 19. Within thirty (30) days after the Fernandez Defendants pay the initial payment into the QSF, the Fernandez Defendants shall deposit an additional sum of $40,000.00 into the QSF and will continue to do so within thirty (30) days of the previous payment on a monthly basis until the Court issues an order of final approval of the class action

settlement ("Final Approval Order"). *See* Maguire Decl., ¶ 19. Within (90) days after the Court issues the Final Approval Order, the Fernandez Defendants shall pay the remaining portion of their $300,000 to the Settlement Claims Administrator, to be paid in three separate payments. *See* Maguire Decl., ¶ 19. Within ninety (90) days after the Court issues the Final Approval Order, the Espinal Defendants shall pay the remaining portion of the Maximum Settlement Amount, to the extent necessary, to the Settlement Claims Administrator, to be paid in three separate payments. *See* Maguire Decl., ¶ 19.

Additionally, subject to the Court's approval, a service award of $10,000.00 will be paid to the Named Plaintiff and a service award of $5,000.00 will be paid to Opt-In Plaintiff, for a combined total of $15,000.00, based on services that they each provided to the Class Members in assisting the Firm in prosecuting this action, to be explained in detail in the Parties' final approval motion. *See* Maguire Decl., ¶ 20. These service awards will be deducted from the Maximum Settlement Amount. *See* Maguire Decl., ¶ 20.  Finally, as payment for all of its fees, costs, and expenses for its handling of all duties related to administration of the Settlement, including the distribution of checks and tax reporting, the Claims Administrator will be paid $13,500.00, which will also be deducted from the Maximum Settlement Amount. *See* Maguire Decl., ¶ 21. After all claims are paid to all putative class members who submit Claim Forms, any amounts representing uncashed settlement checks, uncashed service awards or any other amount remaining in the Maximum Settlement Amount after one hundred (100) days from the mailing of settlement checks shall be returned to the Espinal Defendants within thirty (30) days thereafter. *See* Maguire Decl., ¶ 22.

To determine each Class Member's share of the Settlement Amount, the Maximum Settlement Amount will be reduced by court-approved attorneys' fees, service awards, and other

court-approved fees and expenses, contemplated by the Parties in the Settlement Agreement to calculate the Net Settlement Amount (hereinafter "Net Settlement Amount"). *See* Maguire Decl., ¶ 23. Each Class Member's share will be calculated based upon points earned according to the Espinal Defendants' records, which provide the number of workweeks worked by each Class Member. *See* Maguire Decl., ¶ 23. Each Class Member will earn one point for each week worked between September 25, 2017 and January 20, 2021, based upon Espinal Defendants' employment records provided to counsel prior to the mediation. Each Class Member's earned points will be divided by the aggregate earned points from all Class Members to calculate the Class Member's allocated percentage of the Net Settlement Amount. *See* Maguire Decl., ¶ 23. The Class Member's percentage of the Net Settlement Amount will then be multiplied by the Net Settlement Amount to determine each Class Member's "Individual Gross Amount." *See* Maguire Decl., ¶ 23. This can be expressed through the following formula:

$$NSF \ X \ \frac{Individual \ Class \ Member's \ Points}{Aggregate \ Points \ of \ All \ Class \ Members} = Individual \ Gross \ Amount$$

*See* Maguire Decl., ¶ 23.

Each Class Member that does not opt-out of the Class and that timely submits a Claim Form will be mailed his/her Individual Net Amount, which is the Individual Gross Amount after deductions for taxes and other lawful withholdings to the extent applicable. *See* Maguire Decl., ¶ 24. The monetary terms of the settlement, including the tax treatment of each payment, are explained in the Settlement Agreement. *See* Maguire Decl., ¶ 24; **Exhibit 1**. Class Members who do not opt-out will release any NYLL claims against Defendants <u>for the limited time period only</u> (September 25, 2017 and January 20, 2021). *See* Maguire Decl., ¶ 24. If a Class Member submits a Claim Form, thereby opting into the settlement, that Class Member will become a Collective Member and release all FLSA claims against Defendants as well <u>for the limited time period only</u>

(September 25, 2017 and January 20, 2021). *See* Maguire Decl., ¶ 24. Each Class and Collective

Member's Claim Form will contain the following statement:

> My signature below, on my behalf, and on behalf of my respective
> current, former, and future heirs, spouses, executors, administrators,
> agents, and attorneys constitutes a full and complete release and
> discharge of 183 Food Market Corp., 2358 Food Corp., Roberto
> Espinal, 183 Meat Corp., 2358 Meat Corp., and Sergio Fernandez
> ("Defendants"), and my signature therefore fully, finally, and
> forever releases and discharges Defendants, and their respective
> estates, heirs, executors, administrators, agents, successors, and
> assigns, as well as their individual and collective subsidiaries,
> parents, affiliates, partners (general and limited), members, lenders
> (including any administrative agent or collateral agent for such
> lenders), creditors, insurers, reinsurers, sureties, predecessors, and
> successors of the foregoing, as well as the officers, managers,
> owners, employee benefit plan administrators, owners,
> shareholders, fiduciaries, trustees, directors, employees, agents,
> representatives, attorneys, trustees, executors, heirs, spouses,
> transferees, and assigns of any and all of them, in their individual
> and/or representative capacities, parent companies, subsidiaries,
> related or affiliated companies, and all persons or entities which
> could be jointly liable with any of them, solely in their capacity as
> such (collectively, the "Releasees"), from any and all wage-related
> claims, demands, rights, actions, causes of action, liabilities,
> damages, losses, obligations, judgments, duties, suits, costs,
> expenses, matters, and issues arising in any way during the period
> from September 25, 2017 to January 20, 2021, whether known or
> unknown, contingent or absolute, suspected or unsuspected,
> disclosed or undisclosed, liquidated or unliquidated, matured or
> unmatured, accrued or unaccrued, apparent or unapparent, including
> unknown wage-related claims, that could have been, or might be
> asserted in any court, tribunal any other forum or proceeding,
> against Released Entities and that arise out of, relate to, or concern
> the payment of compensation or wages, including, but not limited
> to, any and all claims asserted in the Action, any and all statutory,
> constitutional, contractual, or common law claims for unpaid regular
> or overtime wages, prevailing wages, improper notice, improper
> paystubs, spread of hours, earned sick time, accrued benefit time,
> unpaid gratuities, bonuses, service charges, living wage, tips, any
> related wage and hour claims, interest on such claims, penalties,
> damages, liquidated damages, attorneys' fees, expenses,
> disbursements, litigation costs and fees, restitution, or equitable
> relief.  This release includes any such claims under the New York
> State Labor Law, and the Fair Labor Standards Act.

> By signing this Consent Form and Release, I hereby consent to
> become a party in this action and authorize Stevenson Marino LLP
> to file this Form with the Court.

*See* Maguire Decl., ¶ 24.

As discussed more fully below, all Parties believe that the settlement offers a fair and reasonable resolution of the claims at issue. Further, all Parties believe that the settlement incorporates and recognizes the substantial risks that each side faces, whether through class certification and decertification motions, summary judgment motions, at trial, and on appeal, had the litigation continued. *See* Maguire Decl., ¶¶ 25-28. Accordingly, Plaintiffs, with the consent of Defendants, request that the Court preliminarily approve this settlement and grant all other relief requested herein.

## III.   <u>ANALYSIS</u>

### A.   <u>The Court Should Grant Preliminary Approval of the Proposed Settlement</u>

#### 1.   *The legal standards for preliminary approval*

Rule 23(e) requires judicial approval for any compromise of claims brought on a class basis. More specifically, the Court must determine whether the settlement is "fair, reasonable, and adequate." Fed. R. Civ. P. 23(e). Likewise, the Second Circuit has held that settling and dismissing FLSA claims with prejudice requires a court order. *See Cheeks*, 796 F.3d at 199. The decision whether to approve a class settlement is left to the district court's sound discretion. *Maywalt v. Parker & Parsley Petroleum Co.*, 67 F.3d 1072, 1079 (2d Cir. 1995).

As a general matter, settlement of class action lawsuits is strongly favored. *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 116 (2d Cir. 2005) (noting the "strong judicial policy in favor of settlements, particularly in the class action context") (internal quotation marks and alterations omitted); *Landin v. UBS Servs. USA LLC*, 2012 WL 488284, at *1 (S.D.N.Y. Feb. 14,

2012) (granting preliminary approval of FLSA and NYLL settlement and noting the "strong judicial policy in favor of settlement of class action suits") (internal quotation marks and alterations omitted). "Provisional settlement class certification and appointment of class counsel have several practical purposes, including avoiding the costs of litigating class status while facilitating a global settlement, ensuring notification of all class members of the terms of the proposed Settlement Agreement, and setting the date and time of the final approval hearing." *Bravo v. Palm West Corp.*, 2015 WL 5826715, at *2 (S.D.N.Y. Sept. 30, 2015) (citing *In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prods. Liab. Litig.*, 55 F.3d 768, 790-92 (3d Cir. 1995)) (noting practical purposes of provisionally certifying settlement class).

Courts have routinely recognized that "courts should give proper deference to the private consensual decision of the parties" bearing in mind "the unique ability of class and defense counsel to assess the potential risks and rewards of litigation . . ." *Sanders v. CJS Solutions Grp., LLC*, 2018 WL 620492, at *3 (S.D.N.Y. Jan. 30, 2018) (internal quotation marks omitted); *Clem v. Keybank, N.A.*, 2014 WL 1265909, at *1 (S.D.N.Y. Mar. 27, 2014); *Clark v. Ecolab, Inc.*, 2009 WL 6615729, at *3 (S.D.N.Y. Nov. 27, 2009). Such deference to a privately negotiated settlement is particularly appropriate when the settlement is the product of arms-length negotiations between the parties. *See Wal-Mart Stores*, 396 F.3d at 116 (discussing "strong judicial policy" in favor of settlements).

Crucially, "[t]he force of this presumption is increased when a settlement is reached with the assistance of an experienced mediator." *Saldana v. Middletown Car-G-Cam Uni Corp.*, 2015 WL 12591678, at *1 (S.D.N.Y. Sept. 23, 2015) (citing *Sukhnandan v. Royal Health Care of Long Island LLC*, 2013 WL 4734818, at *2 (S.D.N.Y. Sept. 3, 2012)); *In re Penthouse Executive Club Comp. Litig.*, 2013 WL 1828598, at *2 (S.D.N.Y. Apr. 30, 2013) ("A settlement . . . reached with

the help of third-party neutrals enjoys a presumption that the settlement achieved meets the requirements of due process."); *Toure v. Amerigroup Corp.*, 2012 WL 1432302, at *1 (E.D.N.Y. Apr. 20, 2012) ("The assistance of an experienced mediator . . . reinforces that the Settlement Agreement is non-collusive."). Courts within the Southern and Eastern Districts of New York have routinely recognized Mr. Scheinman's experience as a mediator in wage and hour class actions "enjoys a presumption that the settlement achieved meets the requirements of due process." *Huerta v. West 62 Operating LLC*, 2018 WL 10601810, at *2 (S.D.N.Y. Jan. 11, 2018) (internal quotations and citation omitted); *Chen v. XpresSpa at Terminal 4 JFK LLC*, 2019 WL 5792315, at *2 (E.D.N.Y. Aug. 20, 2019).

Rule 23(e) establishes a "two-step process" for approval of settlements. *Dover v. British Airways, PLC (UK)*, 323 F. Supp. 3d 338, 338 (E.D.N.Y. 2018) (citing FRCP 23(e)). First, the Court must determine whether the proposed class action settlement deserves preliminary approval; then, following preliminary approval and notice to the class, the Court must determine whether final approval is appropriate. *Id.* (citing *Parker v. City of New York*, 2017 WL 6375736, at *4 (E.D.N.Y. Dec. 11, 2017)). Preliminary approval requires only an "initial evaluation" of the fairness of the proposed settlement on the basis of written submissions and informal presentation by the settling parties. *Sierra & Valentin*, 2015 WL 10934779, at *2 (citing *Newberg on Class Actions* § 11.25 (4th Ed. 2002)). To grant preliminary approval, the court need only find "'probable cause' to submit the [settlement] to class members and hold a full-scale hearing as to its fairness." *Id.* (citing *In re Traffic Exec. Ass'n*, 627 F.2d 631, 634 (2d Cir. 1980)). "If, after a preliminary evaluation of the proposed settlement, the Court finds that it 'appears to fall within the range of possible approval,' the court should order that the class members receive notice of the settlement." *Id.* (quoting *Newberg on Class Actions* § 11.25).

In determining whether a settlement is fair, reasonable, and adequate, courts in this Circuit typically look to the nine "*Grinnell* factors," which are: (1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement;[1] (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class through trial; (7) the ability of the defendant to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; and (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation. *Grinnell Corp.*, 495 F.2d at 463.

In assessing FLSA settlements for approval, courts have considered factors similar to those employed in the Rule 23 context, namely whether the settlement resulted from contested litigation and whether the result represents a fair and adequate resolution of those contested issues. *See Gay v. Tri-Wire Eng'g Solutions, Inc.*, 2014 WL 28640, at *10 (E.D.N.Y. Jan. 2, 2014) (quoting *Khait v. Whirlpool Corp.*, 2010 WL 2025106, at *7 (E.D.N.Y. Jan. 20, 2010)) ("The standard for approving a FLSA settlement is lower than for a Rule 23 settlement because the former does not implicate the same due process concerns . . . [c]ourts approve FLSA settlements when they are reached as a 'result of contested litigation to resolve *bona fide* disputes' and when the 'proposed settlement reflects a reasonable compromise over contested issues' . . . "); *Massiah v. Metroplus Health Plan, Inc.*, 2012 WL 5874655, at *5 (E.D.N.Y. Nov. 20, 2012) ("Typically, courts regard the adversarial nature of a litigated FLSA case to be an adequate indicator of the fairness of the settlement."); *Garcia v. Pancho Villa's of Huntington Vill., Inc.*, 2012 WL 5305694, at *6 (E.D.N.Y. Oct. 4, 2012) ("Because the Settlement Agreement resolves a clear and actual dispute

---

[1] This factor is not presently at issue, and will be fully addressed in the motion for final approval following the claim submission period, at which point the reaction of the class to the settlement will be determined.

waged in contested litigation and resolved through arm's-length settlement negotiations, it should be approved.").

In evaluating a proposed settlement of FLSA claims, courts in this Circuit have routinely applied the five-factor test articulated in *Wolinsky*, 900 F. Supp. 2d at 335. The *Wolinsky* factors examine: (1) the plaintiff's range of possible recovery; (2) the extent to which the settlement will enable the parties to avoid anticipated burdens and expenses in establishing their respective claims and defenses; (3) the seriousness of the litigation risks faced by the parties; (4) whether the settlement agreement is the product of arm's-length bargaining between experienced counsel; and (5) the possibility of fraud or collusion. *See id.* Because the *Grinnell* factors subsume the *Wolinsky* factors, this motion only discusses *Grinnell*.

For the reasons detailed below, Plaintiffs maintain, and for settlement purposes only, Defendant does not contest, that the *Grinnell* factors applicable at this preliminary approval stage, which include the factors used to assess FLSA settlements, weigh in favor of approval of the proposed settlement.

2. ***The proposed settlement is fair, reasonable, and adequate considering the complexity, expense, and likely duration of the litigation, the stage of the proceedings, and discovery completed.***

a. <u>*Complexity, expense, and likely duration of the litigation.*</u>

While Defendants dispute the legal and factual issues in this case, the expense and burden associated with fully developing the Parties' claims and defenses, warrants an early settlement in this matter. Indeed, "[m]ost class actions are inherently complex and settlement avoids the costs, delays and multitude of other problems associated with them." *In re Austrian & German Bank Holocaust Litig.*, 80 F. Supp. 2d 164, 174 (S.D.N.Y. 2000), *aff'd*, 236 F.3d 78 (2d Cir. 2001). Settling this dispute will enable the Parties to focus their resources and energies on other pursuits,

rather than on prolonged, expensive, and risk-laden litigation. *See Stieberger v. Sullivan*, 792 F. Supp. 1376, 1377 (S.D.N.Y. 1992), *rep. & rec. modified at* 801 F.Supp. 1079 (S.D.N.Y. 1992) (approving settlement, noting that the "compromises represented therein constitute a reasonable balance, especially bearing in mind the length of time that would elapse, absent a settlement, before any concrete benefits could be delivered to any class member").

Here, the Parties recognized at an early stage in this action that the need to expend substantial time and expense litigating would potentially be to the detriment of all parties. While the parties dispute certain critical factual issues, including the hours that Plaintiffs alleged they worked, and certain legal issues, such as whether Fernandez Defendants are liable as successors under the law, litigation of those issues will prove to be costly and time-consuming. Considering the financial situations of the Defendants, this expense consideration in light of the duration of the potential litigation loomed large over the parties in the decision to settle the matter. Of course, barring a settlement, the Parties expected to exchange voluminous records, take dozens of depositions, and engage in extension motion practice concerning, *e.g.*: the suitability of collective action treatment; the appropriateness of class action treatment (likely on both a motion for class certification, and if need be, a motion for decertification and/or an interlocutory appeal); and summary judgment motion practice on liability and successor liability. Even if Plaintiffs prevailed at trial and on appeal it could take years for Class Members to recover a monetary judgment. The Parties' settlement, on the other hand, makes monetary relief available promptly and efficiently. Thus, the first *Grinnell* factor weighs in favor of preliminary approval.

           b.      <u>*Stage of proceedings and amount of discovery completed.*</u>

By reaching a mutually agreeable resolution before engaging in formal discovery, dispositive motions, or trial, Plaintiffs and Defendants seek to avoid any additional expense and delay, and for Plaintiffs, to instead ensure recovery for the Class. *Reyes v. Buddha-Bar NYC*, 2009 WL 5841177, at *3 (S.D.N.Y. May 28, 2009) (approving FLSA settlement and noting that "the value of an immediate recovery outweighs the mere possibility of further relief after protracted and expensive litigation"). In evaluating the settlement's fairness at this stage, the proper question is "whether counsel had an adequate appreciation of the merits of the case before negotiating." *In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 537 (3d Cir. 2004). "The pretrial negotiations and discovery must be sufficiently adversarial that they are not designed to justify a settlement . . . [but] an aggressive effort to ferret out facts helpful to the prosecution of the suit." *In re Austrian,* 80 F. Supp. 2d at 176 (internal quotation marks omitted).

Here, the extensive information produced, and informal discovery exchanged were part of "an aggressive effort" to learn the relevant facts and circumstances in an efficient and cost-effective manner and exceeds the required standard. The Parties avoided the time-consuming and costly realities of discovery by engaging in extensive mediation-focused discovery, which included the exchange of class-wide documents and the analysis of class-wide damages for all Class Members and each week worked in the relevant period at the two locations. Because the Espinal Defendants provided all information regarding the Class Members necessary to evaluate overtime damages and documents that permitted Plaintiffs to investigate the Espinal Defendants' records, Plaintiffs had sufficient information to engage in mediation and settle the matter on behalf of the proposed class. Therefore, while this matter is pre-formal discovery, counsel is suitably able to recommend settlement at this juncture. *See* Maguire Decl., ¶¶ 23-28.

3.      **The proposed settlement is fair, reasonable, and adequate given the risks of establishing liability and damages, and maintaining the class through trial.**

To continue this matter through the end of a trial would expose both sides to tremendous risk, including the risk that: Fernandez Defendants might (or might not) secure summary judgment on Plaintiffs' claims of successor liability, vastly reducing Plaintiffs' prospects of recovery; the risk that Plaintiffs might (or might not) obtain certification of a class action (and the risk that any such class and/or conditionally certified collective action might or might not be decertified before trial); and the risk that legal fees and expenses might detract from the amount of money available to Plaintiffs and the Class Members if litigation persisted as well as the potential risk that Plaintiffs and the Class Members would not obtain any recovery against any of the Defendants. After all, records of time and payroll were maintained here and Defendants could rely on those to defeat the claims at issue.  The settlement here provides Plaintiffs with a fair and reasonable recovery in relation to their damages and the risks should they not settle at this amount. Even the possibility that the class "might have received more if the case had been fully litigated is no reason not to approve the settlement." *Granada Invest., Inc. v. DWG Corp.*, 962 F.2d 1203, 1206 (6th Cir. 1992) (citing *Priddy v. Edelman*, 883 F.2d 438, 447 (6th Cir. 1989)).  The proposed settlement is substantial and "provides for relief now, not some wholly speculative payment of a hypothetically larger amount years down the road."  *Strougo v. Bassini*, 258 F. Supp. 2d 254, 260 (S.D.N.Y. 2003); *see also Reyes*, 2009 WL 5841177, at *3. Under these circumstances, it is proper for the Plaintiffs "to take the bird in the hand instead of the prospective flock in the bush." *Oppenlander v. Standard Oil Co.*, 64 F.R.D. 597, 624 (D. Colo. 1974).

In weighing the risks of establishing liability and damages, the Court "must only weigh the likelihood of success by the plaintiff class against the relief offered by the settlement." *In re*

*Austrian*, 80 F. Supp. 2d at 177 (quotation marks omitted). Plaintiffs' counsel is experienced and realistic, and understands that the resolution of these issues, and the outcome of trial (if any) and any appeal, are inherently uncertain. The proposed settlement alleviates all of this risk and uncertainty and thus, this factor weighs heavily in favor of preliminary approval.

> ### 4. *Maintaining the FLSA collective and Rule 23 Class through trial would not be guaranteed.*

In the event that this case is not settled, the Parties would still have to conduct discovery following conditional certification under the FLSA, and discovery geared towards a Rule 23 class certification motion. Defendants would likely contest Plaintiffs' motion for conditional certification under the FLSA and any ensuing Rule 23 motion. Even if Plaintiffs prevailed on both motions, after months of discovery, Defendants would likely move for decertification of any Rule 23 class, necessitating additional rounds of extensive briefing. Defendants could also seek permission to file an interlocutory appeal under Fed. R. Civ. P. 23(f) if Plaintiffs were to prevail. Risk, expense, and delay permeate such a process and settlement eliminates all of it. This fourth factor also favors preliminary approval.

> ### 5. *The Maximum Settlement Amount is substantial, even in light of the best possible recovery and attendant risks of litigation, and the "reasonableness of the proposed settlement" factors support approval of the proposed settlement.*

"The determination of a 'reasonable' settlement is not susceptible to a mathematical equation yielding a particularized sum." *Strougo*, 258 F. Supp. 2d at 260. Rather, "there is a range of reasonableness with respect to a settlement . . ." *Id.* (quoting *Newman v. Stein*, 464 F.2d 689, 693 (2d Cir. 1972)). Thus, "[i]n evaluating the proposed settlement, the court is not to compare its terms with a hypothetical or speculative measure of a recovery that might be achieved by prosecution of the litigation to a successful conclusion." *Republic Nat'l Life Ins. Co. v. Beasley*,

73 F.R.D. 658, 668 (S.D.N.Y. 1970). Instead, "[d]ollar amounts are judged . . . in light of the strengths and weaknesses of plaintiffs' case." *In re Union Carbide Corp. Consumer Prods. Bus. Sec. Litig.*, 718 F. Supp. 1099, 1103 (S.D.N.Y. 1989); *see also Grinnell*, 495 F.2d at 468 (citing *Saylor v. Lindsley*, 456 F.2d 896, 904 (2d Cir. 1972)) ("The evaluation of a proposed settlement requires an amalgam of delicate balancing, gross approximations and rough justice.").

Here, for reasons described above, this settlement is reasonable. The Espinal Defendants produced class information for the entire putative class for the relevant period and documents for a robust sampling of the Class Members that permitted Plaintiffs to analyze the wages and hours paid to the Class Members. *See* Maguire Decl., ¶ 26. Based on Plaintiffs' allegations and the records provided, the calculations for Plaintiffs' best possible day were based on eight (8) overtime hours for each week worked, an overtime rate of $10.41 per hour, and the total workweeks worked by the class adding up to 5,483.57.[2] *See* Maguire Decl., ¶ 26. Based on these numbers Plaintiffs' counsel calculated a maximum potential unpaid overtime recovery of up to $456,964.29 in actual overtime damages. *See* Maguire Decl., ¶ 26. Therefore, when factoring in liquidated damages, Plaintiffs calculated their best possible day for their alleged overtime violations to be $913,928.57. *See* Maguire Decl., ¶ 26. Because Plaintiffs' calculations assume that the Class Members worked every day and every week during their employment periods, Plaintiffs' best day is likely much less than their initial damage calculation of $913,928.57. *See* Maguire Decl., ¶ 26.

As a result of highly adversarial negotiations by experienced counsel, the Parties compromised at $750,000.00, of which Class Members will receive an estimated $460,402.00 of the potential $456,964.29 actual unpaid overtime. *See* Maguire Decl., ¶ 27. According to Plaintiffs'

---

[2] The regular rate was calculated by dividing the weekly wages by the amount of hours worked. The overtime rate was calculated by dividing the regular rate by 2. For example, regular rate = $1,000.00/48. Overtime rate = (regular rate/2).

calculations, this represents almost 100% of their best-case-scenario of actual unpaid overtime damages potentially recoverable in this matter (not counting liquidated damages and interest). *See* Maguire Decl., ¶ 27. This inarguably represents an especially favorable outcome for Class Members at this stage of the litigation. *See* Maguire Decl., ¶ 27.

Thus, in light of Plaintiffs' claims and Defendants' defenses, and the risks/burdens/uncertainties of litigation, the *Grinnell* factors overwhelmingly support that this proposed settlement is fair, reasonable, and adequate. Accordingly, the Court should preliminarily approve it for the Class Members' consideration.

### B.   Certification Under Rule 23 is Warranted.

Further, for purposes of settlement only, the Parties agree that this class meets all of the requirements for Rule 23 class certification. *See* Newburg, § 11.27 ("When the court has not yet entered a formal order determining that the action may be maintained as a class action, the parties may stipulate that it be maintained as a class action for the purpose of settlement only"). Both the Supreme Court, the Second Circuit, and other circuit courts have recognized that the benefits of a proposed settlement can only be realized through the certification of a settlement class. *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 591 (1997); *Joel A. v. Giuliani*, 218 F.3d 132, 143-44 (2d Cir. 2000) (noting benefits to class members who will no longer need to wait for system-wide reform of New York City's administrative system at issue because of the agreement to settle); *accord In re Nat'l Football League Players Concussion Injury Litig.*, 821 F.3d 410, 433-34 (3d Cir. 2016) (noting how class settlement will provide recovery for, e.g., deceased class members "who would otherwise be unable to get the benefits" sought through settlement). Here, for settlement purposes only, Plaintiffs submit, and Defendants do not contest, that the elements of

21

Rule 23 are met with respect to the proposed settlement, which accordingly warrants settlement

class certification.[3]

For a lawsuit to be maintained as a class action under Fed. R. Civ. P. 23, a putative class

representative must establish each of the four threshold requirements of subsection (a) of the Rule,

which provides that:

> One or more members of a class may sue or be sued as representative
> parties on behalf of all only if: (1) the class is so numerous that
> joinder of all members is impracticable; (2) there are questions of
> law or fact common to the class; (3) the claims or defenses of the
> representative parties are typical of the claims or defenses of the
> class; and (4) the representative parties will fairly and adequately
> protect the interests of the class.

As discussed below, all such factors are satisfied for settlement purposes.

### 1.    *Numerosity*

The numerosity requirement is met when the class is "so numerous that joinder of all

members is impractical." Fed. R. Civ. P. 23(a)(1).  In this Circuit, "no magic minimum number

establishes numerosity." *Deen v. New Sch. Univ.*, 2008 WL 331366, at *2 (S.D.N.Y. Feb. 4, 2008)

(quotation omitted).  In determining numerosity, "the relevant considerations a court may consider

include: (1) judicial economy arising from the avoidance of multiplicity of actions; (2) geographic

dispersion of class members; (3) financial resources of class members; (4) the ability of claimants

to institute individual suits; and (5) requests for prospective injunctive relief which would involve

future class members." *Gortat v. Capala Bros., Inc.*, 2012 WL 1116495, at *3 (E.D.N.Y. Apr. 3,

---

[3] Because 29 U.S.C. § 216(b)'s "similarly situated" requirement is "considerably less stringent" than Rule 23's class certification requirements, if a class meets the requirements of Rule 23, then, as a general matter, it also meets the requirements for certification under the FLSA. *See, e.g., Taylor v. Delta-Sonic Car Wash Sys., Inc.*, 2017 WL 436045, at *4 (W.D.N.Y. Jan. 31, 2017) (approving Rule 23 class and FLSA collectives for "substantially the same reasons"); *Valerio v. RNC Indus., LLC*, 314 F.R.D. 61, 65 (E.D.N.Y. 2016) (contrasting, in general, requirements for FLSA certification and Rule 23 certification).

2012) (citing *Robidoux v. Celani*, 987 F.2d 931, 936 (2d Cir. 1993)). Numerosity is presumed where a class has forty or more members. *Sierra & Alexander*, 2015 WL 10934779, at *3 (citing *Consol. Rail Corp. v. Town of Hyde Park*, 47 F.3d 473, 483 (2d Cir. 1995)). Here, numerosity is satisfied as the class is comprised of approximately 85 individuals.

### 2. *Commonality*

Plaintiffs also maintain, and Defendants do not contest for the purposes of this motion only, that the proposed class satisfies the commonality requirement under Rule 23(a)(2), the purpose of which is to test "whether the named plaintiff's claim and the class claims are so intertwined that the interests of the class members will be fairly and adequately protected in their absence." *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 157 n.13 (1982). This case involves common issues of fact and law involving alleged unpaid overtime wages arising from employment by non-managerial employees at a supermarket. For settlement purposes in this case, this is sufficient to establish commonality under Rule 23. *See Sierra & Alexander*, 2015 WL 10934779, at *3 (commonality requirement satisfied where "Plaintiffs and Class Members share common issues of fact and law, including whether Defendants violated the wage and hour laws by failing to pay overtime rates for all hours worked over forty (40) in a workweek").

### 3. *Typicality*

Plaintiffs also maintain, and Defendants do not contest for the purposes of this motion only, that typicality under Rule 23(a)(3) is satisfied for purposes of the proposed settlement. As a general matter, typicality is satisfied "when each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability." *Marisol A. v. Giuliani*, 126 F.3d 372, 376 (2d Cir. 1997) (citation omitted). "When it is alleged that the same unlawful conduct was directed at or affected both the named plaintiff and the class

sought to be represented, the typicality requirement is usually met irrespective of minor variations in the fact patterns underlying individual claims." *Robidoux*, 987 F.2d at 936-37. Here, the Plaintiffs' "claims for overtime pay [ ] arise from the same factual and legal circumstances that form the bases of the Class Members claims." *Sierra & Alexander*, 2015 WL 10934779, at *3 (citation omitted).

### 4.    *Adequacy of class representative*

Rule 23(a)(4) requires that "the representative part[y] will fairly and adequately protect the interests of the class." Adequacy requires that "the proposed class representative must have an interest in vigorously pursuing the claims of the class, and must have no interests antagonistic to the interests of other class members." *Denney v. Deutsche Bank AG*, 443 F.3d 253, 268 (2d Cir. 2006). Here, as detailed herein, Named Plaintiff has vigorously pursued the interests of the Class by assisting with the preparation of the lawsuit before filing, assisted with the pre-litigation investigation and complaint-drafting, production of records, and participation in mediation preparation and the mediation, and thus for purposes of settlement, the interests of Named Plaintiff and the Class are aligned. Accordingly, for purposes of settlement, Plaintiffs maintain, and Defendants do not contest, that Named Plaintiff is an adequate class representative. *See Sierra & Alexander*, 2015 WL 10934779, at *3 (finding Rule 23(a)(4) satisfied "because Plaintiffs' interests are not antagonistic or at odds with Class Members") (citation omitted).

### 5.    *Rule 23(a)'s "implied" ascertainability requirement*

Additionally, although not expressly stated in Rule 23(a), "courts have added an implied requirement of ascertainability with respect to the class definition." *Vivaldo v. United Talmudical Acad. of Kiryas Joel, Inc.*, 2015 WL 4922961, at *5 (S.D.N.Y. Aug. 18, 2015) (citing *Hamelin v. Faxton–St. Luke's Healthcare*, 274 F.R.D. 385, 393 (N.D.N.Y. 2011)). Courts require that "a class

be identifiable before it may be properly certified." *Hamelin*, 274 F.R.D. at 396 (citing *Dunnigan v. Metro. Life. Ins. Co.*, 214 F.R.D. 125, 135 (S.D.N.Y. 2003)).  "An identifiable class exists if its members can be ascertained by reference to objective criteria." *Stinson v. City of New York*, 282 F.R.D. 360, 367 (S.D.N.Y.2012) (citation omitted). Here, the class is easily identifiable, as Plaintiffs have reviewed a list with the 85 individuals who worked at one (or both) of the two supermarket locations as a non-managerial employee during the relevant period. Thus, this requirement is met. For the purposes of this motion only, Defendants do not contest that the class is identifiable.

### 6.    *Certification under Rule 23(b)(3) is satisfied*

The two requirements of Rule 23(b)(3), namely superiority and predominance, are also met here for settlement purposes. Rule 23(b)(3) requires that common questions of law or fact "predominate over any questions affecting only individual members and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy." This inquiry examines "whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *See Amchem*, 521 U.S. at 623. Satisfaction of Rule 23(a) "goes a long way toward satisfying the Rule 23(b)(3) requirement of commonality." *Rossini v. Ogilvy & Mather, Inc.*, 798 F.2d 590, 598 (2d Cir. 1986).

Here, Plaintiffs maintain, and Defendants do not contest for the purposes of this motion only, that common questions predominate because "the issues in the class action . . . are subject to generalized proof, and thus applicable to the class as a whole." *In re Visa Check/MasterMoney Antitrust Litig.*, 280 F.3d 124, 138 (2d Cir. 2001). Indeed, all Class Members are unified by the allegation that they worked at one (or both) of the two supermarket locations as a non-managerial employee during the relevant period, and that they allegedly were not paid for all hours worked

over forty at the applicable overtime rate. As a result, predominance is satisfied.

Further, class certification is a superior method to resolve this action compared to individual actions. *Green v. Wolf Corp.*, 406 F.2d 291, 301 (2d Cir. 1968). No individual Class Member has brought or reasonably will bring an individual action given the small potential individual recovery for each person, and there is a strong desirability to efficiently concentrate the claims in this single forum. *See* Fed. R. Civ. P. 23(b)(3). Accordingly, under these circumstances, Plaintiffs submit, and Defendants do not contest, that the requirements of Rule 23(b)(3) are met because a class action is superior to other available methods for adjudication.

### 7.    *Plaintiff's counsel should be appointed as Class Counsel*

Stevenson Marino should be named as class counsel. Rule 23(g) sets forth the factors that the court should consider in making this determination: (1) the work counsel has done in identifying or investigating potential class claims; (2) counsel's experience in handling class actions of the type asserted; (3) counsel's knowledge of the applicable law; and (4) the resources counsel will commit to represent the class. As detailed herein, Plaintiffs' counsel: (1) investigated this matter prior to commencing this action; prepared and filed the Complaint; (2) spoke with Plaintiffs regularly regarding their claims and allegations; (3) investigated the sale of the supermarket and drafted an amended complaint to add the necessary parties; (4) analyzed the Plaintiffs' time and pay records; (5) created detailed damages calculations for all Class Members; (6) participated in mediation; (7) negotiated a settlement with Defendants' counsel and drafted the class settlement agreement; and (8) prepared the instant motion and supporting documents.

Furthermore, Plaintiffs' counsel is experienced in class action litigation, and thus adequate to represent the class here. *See* Maguire Decl., ¶ 29 (citing several recent cases where Stevenson Marino and Jeffrey R. Maguire have been appointed as class counsel in Rule 23 class action

involving wage and hour claims). Accordingly, Plaintiffs' counsel's professional experience and time spent on this matter qualifies them to represent the class. *See Yuzary*, 2013 WL 5492998, at *3 (deeming lawyers adequate to litigate case because they have "substantial experience prosecuting and settling employment class actions, including wage and hour class actions[,] and are well-versed in wage and hour law and class action law.").

### C.    **The Proposed Notice is Appropriate**

The content of the Proposed Notice and Claim Form, attached as **Exhibits 2** and **3** to the Maguire Declaration, fully comply with all requirements under Rule 23. Pursuant to Rule 23(c)(2)(B), the notice must provide the best notice practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort. The notice must be concise and in plain language, and set forth the claims, terms of settlement, method to object or be excluded, and the binding effect of the settlement. The proposed Notice here meets these requirements by providing specific and clear information to the Class Members, in plain language that is easy to understand, and sets forth the terms of the deal therein. The proposed Notice also clearly informs Class Members: how their individual settlement shares will be calculated, explaining the above-described point-system; how to submit their Claim Forms, object to, or opt-out of the settlement; and adequately informs Class Members of the effects of the settlement, whether they choose to do nothing, participate by submitting their Claim Forms, opt-out, or object.

The Notice will be distributed consistent with the requirements of fairness and due process by sending the same to the Class Members via first class mail. The Claims Administrator will also translate the notice into Spanish and send copies to all Class Members in both English and Spanish. The Claims Administrator will also perform a skip trace to identify any updated or alternative addresses for notices returned as undeliverable, furthering the reasonableness of disseminating

27

notice here. Class Members will have a period of sixty (60) days to decide whether to participate in the settlement by doing nothing, object, or opt-out. As a result, because this Notice and Claim Form, as well as the proposed methods of distribution, fully comply with the requirements under Rule 23, the Court should approve them accordingly.

Finally, the Parties have selected Arden to serve as the Claims Administrator in this action. Arden is an experienced class action settlement administrator that has handled hundreds of class action settlements around the United States. *See* Maguire Decl., ¶ 15.

## IV.   CONCLUSION

For the reasons stated above, Plaintiffs, on consent of Defendants, respectfully request that the Court: (1) grant preliminary approval of the settlement described herein and in the Settlement Agreement; (2) approve the proposed Notice and Claim Form attached to the Maguire Declaration as **Exhibits 2** and **3**, and approve the claims procedure detailed herein and in the Settlement Agreement; (3) certify the two overlapping settlement classes under Fed. R. Civ. P. 23(a) and (b)(3) and 29 U.S.C. § 216(b) for purposes of effectuating the settlement; (4) appoint Named Plaintiff as the Class Representative; (5) appoint Stevenson Marino as class counsel; (6) appoint Arden, as the Claims Administrator; (7) approve the Parties' proposed schedule for obtaining final settlement approval and schedule a fairness hearing; and (8) enter the Proposed Order attached to the Maguire Declaration as **Exhibit 4**.

Dated: New York, New York
       October 21, 2021

Respectfully submitted,

_____
Jeffrey R. Maguire
STEVENSON MARINO LLP

28