UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| FELIPE HURTADO, on behalf of himself and all others similarly-situated,<br><br>　　　　　　　Plaintiff,<br><br>　　-against-<br><br>183 FOOD MARKET CORP. d/b/a FOOD UNIVERSE, and 2358 FOOD CORP., and ROBERTO ESPINAL, individually, and 183 MEAT CORP., and 2358 MEAT CORP., and SERGIO FERNANDEZ, individually,<br><br>　　　　　　　Defendants. | **Docket No.: 20-cv-7988 (KPF)** |

### MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S MOTION FOR FINAL APPROVAL OF THE CLASS ACTION SETTLEMENT

**STEVENSON MARINO LLP**

Jeffrey R. Maguire

Justin R. Marino

J.R. Stevenson

105 Maxess Road, Suite 124

Melville, New York 11747

*Attorneys for Plaintiffs*

i

## TABLE OF CONTENTS

I.     PRELIMINARY STATEMENT ...................................................................1

II.    BACKGROUND ...........................................................................................3

    A.    Procedural History, Named Plaintiffs' Allegations, Discovery, and Mediation ......................................................................................................3

    B.    Order Granting Preliminary Approval of Settlement.......................................3

    C.    Claims Administration ...................................................................................4

III.   ANALYSIS ...................................................................................................6

    A.    The Rule 23 Class Action Settlement is Fair, Adequate, and Reasonable ....................................................................................................6

        1.    *Procedural Fairness*.................................................................................7

        2.    *Substantive Fairness*.............................................................................10

    B.    The Court Should Approve the Settlement of the FLSA Claims ..................13

    C.    Service Awards.............................................................................................13

    D.    Attorneys' Fees............................................................................................16

        1.    *The Percentage Method is the Preferred Method for Awarding Attorneys' Fees in Common Fund Cases in this Circuit*.........................................166

            a.    The Second Circuit recently found percentage of the gross settlement fund, rather than percentage of fund net expenses to be fair and reasonable .....................................................................17

            b.    The Goldberger factors support an award of 30% of the gross fund created ...............................................................................19

                i.    *The Firm's Time and Labor*......................................20

                ii.    *The Magnitude and Complexities of the Litigation*.........22

                iii.   *The Risk of Litigation*...........................................23

                iv.   *The Quality of the Representation*..............................23

|  |  | *v.* | *The Requested Fee in Relation to the Settlement*………..24 |
|--|--|------|---------------------------------------------------------|
|  |  | *vi.* | *Public Policy Considerations*……………………………25 |
|  | **2.** | | **_The Lodestar Cross-Check Further Supports an Award of Thirty Percent of the Settlement Fund_**.......................................................................26 |
|  |  | a. | The lodestar multiplier is within a reasonable range .....................26 |
|  |  | b. | The Firm's rates used to calculate the lodestar are fair and reasonable .........................................................................................28 |
| **E.** | **Litigation Expenses** ...............................................................................................29 |
| **F.** | **Claims Administrator's Fees and Costs** ...........................................................29 |
| **IV.** | **CONCLUSION** .............................................................................................................30 |

# **TABLE OF AUTHORITIES**

**Cases**                                                                        **Page(s)**

*Acevedo v. Workfit Medical LLC*,
   187 F. Supp. 3d 370 (W.D.N.Y. 2016) ........................................................ 12

*Alleyne v. Time Moving & Storage, Inc.*,
   264 F.R.D. 41 (E.D.N.Y. 2010) ........................................................... 11, 18

*Almond v. PJ Far Rockaway, Inc.*,
   2018 WL 922184 (E.D.N.Y. Feb. 15, 2018) ................................................... 28

*Asare v. Change Grp. of New York, Inc.*,
   2013 WL 6144764 (S.D.N.Y. Nov. 13, 2013) .............................................. 19, 24

*Azogue v. 16 for 8 Hospitality LLC*,
   2016 WL 441422 (S.D.N.Y. Aug. 19, 2016) ............................................ *passim*

*Beckman v. KeyBank, N.A.*,
   293 F.R.D. 467 (S.D.N.Y. 2013) ....................................................... *passim*

*Bijoux v. Amerigroup N.Y., LLC*,
   2016 WL 2839797 (E.D.N.Y. May 12, 2016) ......................................... 13, 22, 23

*Capsolas v. Pasta Resources, Inc.*,
   2012 WL 4760910 (S.D.N.Y. Oct. 5, 2012) ................................................... 27

*Castagna v. Madison Square Garden, L.P.*,
   2011 WL 2208614 (S.D.N.Y. June 7, 2011) .................................................... 8

*Ceka v. PBM/CMSI Inc.*,
   2014 WL 6812127 (S.D.N.Y. Dec. 2, 2014) ................................................... 28

*Cheeks v. Freeport Pancake House, Inc.*,
   796 F.3d 199 (2d Cir. 2015) ............................................................... 2, 13

*Chen v. XpresSpa at Terminal 4 JFK LLC*,
   2021 WL 4487835 (E.D.N.Y. Oct. 1, 2021) ................................................... 14

*D'Amato v. Deutsche Bank*,
   236 F.3d 78 (2d Cir. 2001) ..................................................................... 7

*Darby v. Sterling Home Care, Inc.*,
   2020 WL 29932 (S.D.N.Y. Jan 2, 2020) ........................................................ 28

*Davenport v. Elite Model Mgmt. Corp.*,
   2014 WL 12543814 (S.D.N.Y. Jan. 9, 2014) ................................................... 8

*Davis v. J.P. Morgan Chase & Co.*,
   827 F. Supp. 2d 172 (W.D.N.Y. 2011) ........................................................... 27

*Deposit Guar. Nat'l Bank v. Roper*,
   445 U.S. 326 (1980) ........................................................................................ 25

*Duchene v. Michael Cetta, Inc.*,
   2009 WL 5841175 (S.D.N.Y. Sept. 10, 2009) ............................................... 14

*Dupler v. Costco Wholesale Corp.*,
   705 F. Supp. 2d 231 (E.D.N.Y. 2010) ........................................................... 11

*Emeterio v. A&P Restaurant Corp.*,
   2022 WL 274007 (S.D.N.Y. Jan. 26, 2022) ................................................... 16

*Encalada v. Baybridge Enters. Ltd.*,
   2014 WL 4374495 (E.D.N.Y. Sept. 2, 2014) ................................................. 29

*Fisher v. SD Protection Inc*,
   948 F.3d 593 (2d Cir. 2020) ............................................................... 17, 18, 24

*Fleisher v. Phoenix Life Ins. Co.*,
   2015 WL 10847814 (S.D.N.Y. Sept. 9, 2015) ............................................... 27

*Flores v. Mamma Lombardi's of Holbrook, Inc.*,
   104 F. Supp. 3d 290 (E.D.N.Y. 2015) ........................................................... 15

*Flynn v. N.Y. Dolls Gentlemen's Club*,
   2015 WL 3916161 (S.D.N.Y. April 28, 2015) ............................................... 28

*Fresno Cnty. Employees' Ret. Ass'n v. Isaacson/Weaver Family Trust*,
   925 F.3d 63 (2d Cir. 2019) ............................................................................. 16

*Goldberger v. Integrated Res. Inc.*,
   209 F.3d 43 (2d Cir. 2000) ................................................................. 10, 17, 19, 24

*Gonzalez v. City of N.Y.*,
   396 F. Supp. 2d 411 (S.D.N.Y. 2005) ........................................................... 12

*Gonzalez v. City of New York*,
   396 F. Supp. 2d 411 (S.D.N.Y. 2005)..................................................................... 12

*Guaman v. Ajna-Bar NYC*,
   2013 WL 445896 (S.D.N.Y. Feb. 5, 2013).............................................................. 25

*Hadel v. Gaucho, LLC*,
   2016 WL 1060324 (S.D.N.Y. March 14, 2016) ................................................... 8, 27

*Hall v. ProSource Technologies, LLC*,
   2016 WL 1555128 (E.D.N.Y. Apr. 11, 2016) ......................................................... 26

*Henry v. Little Mint, Inc.*,
   2014 WL 2199427 (S.D.N.Y. May 23, 2014) ......................................................... 19

*Hernandez v. Immortal Rise, Inc.*,
   306 F.R.D. 91 (E.D.N.Y. 2015).................................................................... *passim*

Hernandez v. Merrill Lynch & Co., Inc.,
   2012 WL 5862749 (S.D.N.Y. Nov. 15, 2012)........................................................... 8

*In re Adelphia Commc'ns Corp. Sec. Litig.*,
   271 Fed. App'x 41 (2d Cir. 2008)........................................................................... 11

*In re Prudential Sec. Inc. Ltd. P'ships Litig.*,
   164 F.R.D. 362 (S.D.N.Y. 1996) ........................................................................... 11

*In re W. Union Money Transfer Litig.*,
   2004 WL 3709932 (E.D.N.Y. Oct. 19, 2004).......................................................... 12

*Isaacson/Weaver Family TArden*,
   925 F.3d 63 (2d Cir. 2019).................................................................................... 16

*Joel A. v. Giuliani*,
   218 F.3d 132, 138 (2d Cir. 2000)............................................................................. 7

*Karic v. Major Automotive Companies, Inc.*,
   2016 WL 1745037, at *8 (E.D.N.Y. Apr. 27, 2016) ............................................... 14

*Kassim v. City of Schenectady*,
   415 F.3d 246 (2d Cir. 2005).................................................................................. 18

*Khait v. Whirlpool Corp.*,
   2010 WL 2025106 (E.D.N.Y. Jan. 20, 2010) ......................................................... 27

*Kochilas v. National Merchant Servs., Inc.*,
   2015 WL 5821631 (E.D.N.Y. Oct. 2, 2015) ........................................... 23, 25, 26, 27

*Kornell v. Haverhill Retirement Sys.*,
   790 Fed. Appx. 296 (2d Cir. 2019) ................................................................ 17

*Lizondro-Garcia v. Kefi LLC*,
   2015 WL 4006896 (S.D.N.Y. July 1, 2015) ................................................... 25

*Lynn's Food Stores, Inc. v. United States*,
   679 F.2d 1350 (11th Cir. 1982) ..................................................................... 13

*Maley v. Del Global Technologies Corp.*,
   186 F. Supp. 2d 358 (S.D.N.Y. 2002) ........................................................... 27

*Manley v. Midan Rest. Inc.*,
   2017 WL 1155916 (S.D.N.Y. Mar. 27, 2017) ............................................... 21

*Marshall v. Deutsche Post DHL*,
   2015 WL 5560541 (E.D.N.Y. Sept. 21, 2015) ............................................... 11

*Masters v. Wilhelmina Model Agency, Inc.*,
   473 F.3d 423 (2d Cir. 2007) ..................................................................... 17, 18

*McLaughlin v. IDT Energy*,
   2018 WL 3642627 (E.D.N.Y. July 30, 2018) ............................................... 16

*McReynolds v. Richards-Cantave*,
   588 F.3d 790 (2d Cir. 2009) ........................................................................... 7

*Mills v. Capital One, N.A.*,
   2015 WL 5730008, at *10 (S.D.N.Y. Sept. 30, 2015) ................................... 26

*Morris v. Affinity Health Plan, Inc.*,
   859 F. Supp. 2d 611 (S.D.N.Y. 2012) ......................................................... 7, 27

*Powers v. Eichen*,
   229 F.3d 1249 (9th Cir. 2000) ....................................................................... 17

*Pucciarelli v. Lakeview Cars, Inc.*,
   2017 WL 2778029 (E.D.N.Y. June 26, 2017) ........................................... 20, 26

*Puglisi v. TD Bank, N.A.*,
   2015 WL 4608655 (E.D.N.Y. July 30, 2015) ............................................... 28

*Quow v. Accurate Mech.*,
   2018 WL 3368673 (S.D.N.Y. July 10, 2019) ........................................................ 13

*Ramos v. Nikodemo Operating Corp.*,
   2017 WL 11508016, at *8 (E.D.N.Y. Aug. 7, 2017)............................................. 26

*Raniere v. Citigroup, Inc.*,
   310 F.R.D. 221 (S.D.N.Y. 2015) ......................................................................... 19

*Reyes v. Altamarea Group, LLC*,
   2011 WL 4599822 (S.D.N.Y. Aug. 16, 2011) ...................................................... 15

*Romero v. La Revise Assocs., LLC*,
   58 F. Supp. 3d 411 (S.D.N.Y. 2014)................................................................. 6, 11

*Sakiko Fujiwara v. Sushi Yasuda Ltd.*,
   58 F. Supp. 3d 424 (S.D.N.Y. 2014)..................................................................... 27

*Saldana v. Middletown Car-G-Cam Uni Corp.*,
   2015 WL 12591678 (S.D.N.Y. Sept. 23, 2015)..................................................... 9

*Sand v. Greenberg,*
   2010 WL 69359 (S.D.N.Y. Jan. 7. 2010) ............................................................. 25

*Sewell v. Bovis Lend Lease, Inc.*,
   2012 WL 1320124 (S.D.N.Y. Apr. 16, 2012)........................................................ 14

*Siddiky v. Union Square Hospitality Grp., LLC*,
   2017 WL 2198158 (S.D.N.Y. May 17, 2017) ............................................. 19, 29, 30

*Sierra v. Spring Scaffolding LLC*,
   2015 WL 10912856 (E.D.N.Y. Sept. 30, 2015) .................................................... 14

*Stinson v. City of N.Y.*,
   256 F. Supp. 3d 283 (S.D.N.Y. 2017)................................................................... 11

*Sukhnandan v. Royal Health Care of Long Island LLC*,
   2014 WL 3778173 (S.D.N.Y. July 31, 2014) ....................................................... 22

*Thornhill v. CVS Pharmacy, Inc.*,
   2014 WL 1100135 (S.D.N.Y. Mar. 20, 2014) ...................................................... 16

*Torres v. Gristede's Operating Corp.*,
   2010 WL 5507892 (S.D.N.Y. Dec. 21, 2010) ...................................................... 15

*Toure v. Amerigroup Corp.*,
   2012 WL 3240461 (E.D.N.Y. Aug. 6, 2012)..........................................................27

*Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*,
   396 F.3d 96 (2d Cir. 2005).................................................................... 7, 10, 12

*Willix v. Healthfirst, Inc.*,
   2011 WL 754862 (E.D.N.Y. Feb. 18, 2011)................................................ 14, 15

*Wolinsky v. Scholastic, Inc.*,
   900 F. Supp. 2d 332 (S.D.N.Y. 2012).............................................................. 2

*Wright v. Stern*,
   553 F. Supp. 2d 337 (S.D.N.Y.2008)............................................................. 11

*Zimmer v. Paper Prods. Inc. v. Berger & Montague, P.C.*,
   758 F.2d 86 (3d Cir. 1985).......................................................................... 12

## I.   __PRELIMINARY STATEMENT__

This wage and hour action was brought pursuant to the Fair Labor Standards Act ("FLSA") and the New York Labor Law ("NYLL") by Named Plaintiff, Felipe Hurtado ("Named Plaintiff"), and the opt-in Plaintiff, Leonardo Pena Adames ("Opt-in Plaintiff," and together, with Named Plaintiff, as "Plaintiffs"), against Defendants, 183 Food Market, Corp. d/b/a Food Universe, 2358 Food Corp., and Roberto Espinal (collectively as "Espinal Defendants"), and 183 Meat Corp., 2358 Meat Corp., and Sergio Fernandez (collectively as "Fernandez Defendants," and together with Espinal Defendants as "Defendants"). Plaintiff brought this action on behalf of himself as well as on behalf of similarly situated non-managerial workers at Defendants' supermarkets located at 60 West 183rd Street, Bronx, New York and 2358 University Avenue, Bronx, New York 10468 (hereinafter referred collectively with Plaintiffs as "Class Members").

On October 26, 2021, the Court entered an order granting Plaintiffs' Motion for Preliminary Approval of the Class Action Settlement (hereinafter "Preliminary Approval Motion"). *See* Dkt. No. 77. Subsequently, on December 3, 2021, after learning that the Espinal Defendants' class list was deficient, Plaintiffs moved to compel production of the complete class list information. *See* Dkt. No. 77. On December 6, 2021, the Court granted Plaintiffs' motion and on December 10, 2021, the Court held a conference. On December 13, 2021, based on Plaintiffs' representation to the Court that the existing settlement was not fair and reasonable in light of the expanded list of putative Class Members, the Court referred the matter to Magistrate Judge Parker for a settlement conference. *See* Dkt. No. 81.

After all parties were able to evaluate the damages in light of the new class information, the parties once again reached a settlement to resolve the matter. Accordingly, on January 14, 2022, the parties filed a Supplemental Letter in Support of Preliminary Approval of Class Action

Settlement ("Supplemental Letter"), with an Amended Settlement Agreement, Amended Class Notice and Claim Form, and an Amended Proposed Order. *See* Dkt. No. 86. On January 25, 2022, the Court granted preliminary approval of the class action as amended (hereinafter the "Preliminary Approval Order"). *See* Dkt. No. 87. Now, on consent of Defendants, Plaintiffs respectfully submit this motion seeking final approval of the Rule 23 class and FLSA settlement pursuant to Federal Rule of Civil Procedure ("Rule" or "Fed.R.Civ.P.") 23(e), *City of Detroit v. Grinnell Corp.*, 495 F.2d 448 (2d Cir. 1974), *Cheeks v. Freeport Pancake House, Inc.*, 796 F.3d 199 (2d Cir. 2015), and *Wolinsky v. Scholastic, Inc.*, 900 F. Supp. 2d 332 (S.D.N.Y. 2012).

For the reasons set forth herein, and upon the annexed Declaration of Jeffrey R. Maguire ("Maguire Decl."), and the Declaration of Barry Peek, on behalf of Arden Claims Service LLC ("Arden"), as Claims Administrator ("Peek Decl."), and all exhibits annexed thereto, and upon all prior pleadings and proceedings had herein, Plaintiffs respectfully request that the Court grant this motion and enter an Order as follows:

1) Granting final approval of the settlement for the Rule 23 and FLSA settlement classes in accordance with the parties' Settlement Agreement, filed contemporaneously with Plaintiffs' Preliminary Approval Motion (*see* Dkt. No. 74);

2) Authorizing the distribution of settlement checks to all Plaintiffs who previously opt into this action as well as all Class Members who timely submitted a valid Claim Form and Release ("Claim Form"), representing their respective shares of the class settlement;

3) Awarding Service Awards to the Named Plaintiff and Opt-in Plaintiff in the total amount of $15,000.00, for their work provided to secure the result on behalf of the Class Members;

4) Awarding attorneys' fees in the amount of $247,500.00, for legal services performed in prosecuting and settling the claims in this action, to Stevenson Marino LLP as Class Counsel;

5) Awarding $6,471.41 for costs and out-of-pocket expenses to Class Counsel;

6) Awarding $13,500.00 for claims administration fees and costs to Arden, the court-

appointed Claims Administrator in this matter;

7) Providing for the release of all claims as specified in the Settlement Agreement by all Class Members who did not properly and timely opt-out of the settlement; and

8) Dismissing this action against Defendants with prejudice, but with the Court's continued jurisdiction over the construction, interpretation, implementation, and enforcement of the parties' settlement, as well as over the administration and distribution of the settlement fund.

## II.    BACKGROUND

### A.    Procedural History, Named Plaintiffs' Allegations, Discovery, and Mediation

For a complete recount of the procedural history of this action, the Named Plaintiffs' allegations, the motion practice, the discovery, and the mediation through which the parties agreed to the proposed settlement of the collective and class action now before the Court, Plaintiffs respectfully refer the Court to the section of their Preliminary Approval Motion and Supplemental Letter addressing same. *See* Dkt. Nos. 74, § II, at 3-7; 86.

### B.    Order Granting Preliminary Approval of Settlement

On January 25, 2022, the Court granted the Preliminary Approval Order, certifying two separate classes, for the purposes of settlement only. *See* Dkt. No. 87, ¶ 3. Additionally, the Court approved the parties' proposed Amended Notice of Pendency of Class Action Settlement ("Notice") and Claim Form. *See id.*, ¶ 6. The Order additionally appointed Arden as the Claims Administrator and accordingly directed the parties to require Arden to send the Notice to Class Members by February 24, 2022, with any Claim Forms, opt-out statements, or objections to be received by on or before April 25, 2022. *See id.*, ¶¶ 9, 12. The Court's Order also scheduled a briefing schedule for this motion and a fairness hearing to be held on June 24, 2022, at 10:00 a.m. *See id.*, ¶¶ 17-18.

### C.      <u>Claims Administration</u>

On January 25, 2022, Arden received the Court-approved Notice from the parties, which Arden formatted and with which it included a postage pre-paid, pre-addressed return envelope, which together comprised the Notice Packets to be sent to Class Members via First Class Mail and email. *See* Peek Decl., ¶ 4. Pursuant to the Court's Order, on February 8, 2022, the Espinal Defendants' counsel provided Arden with a list (hereinafter, the "Class List") containing the names, and last known mailing addresses of 128 Class Members. *See* Peek Decl., ¶ 5. The mailing addresses contained in the Class List were processed and updated utilizing the National Change of Address Database ("NCOA") maintained by the United States Postal Service ("USPS"). *See* Peek Decl., ¶ 6. The NCOA contains changes of address information filed with the USPS. In the event that any individual had filed a USPS change of address request, the address listed with the NCOA was utilized in connection with the mailing of the Notice and Claim Form. *See* Peek Decl., ¶ 6.

The Notice Packets advised Class Members of their right to be included in the Settlement, their right to submit claim forms to receive their settlement shares if they had not already opted into the action, their right to opt-out of the Settlement, their right to object to the Settlement, and the implications of each such action. *See* Peek Decl., ¶ 7. The Notice Packets additionally advised Class Members of the applicable deadlines and pertinent events, including the date and location of the Fairness Hearing, the formula that determined how each Class Member's award would be calculated, and how Class Members could obtain additional information. *See* Peek Decl., ¶ 7. A sample Rule 23 Notice Packet is attached to the Peek Decl. as **Exhibit 1**.

On February 24, 2022, Arden mailed the Notice Packets via First Class Mail and email to 128 Class Members contained in the Class List, in both English and Spanish. *See* Peek Decl., ¶ 8. Arden received sixteen (16) Notice Packets back as undeliverable. *See* Peek Decl., ¶ 9. Four (4) of

the Notice Packets were returned by the USPS as undeliverable but with a forwarding address, and these were re-mailed to the forwarding addresses received. *See* Peek Decl., ¶ 9. Twelve (12) Notice Packets were returned without a forwarding address. *See* Peek Decl., ¶ 9. Arden performed an advanced address search on these addresses by using LexisNexis, a reputable research tool. *See* Peek Decl., ¶ 9. Arden used the Class Member's name, previous address, and social security number, if one was available, to attempt to obtain a current address. *See* Peek Decl., ¶ 9. Through the twelve (12) advanced address searches performed, Arden was able to locate nine (9) updated addresses and Arden promptly re-mailed Notice Packets to Class Members to those updated addresses. *See* Peek Decl., ¶ 9. Of those, two (2) were returned undelivered a second time, but one (1) was mailed a third time. *See* Peek Decl., ¶ 9. Accordingly, Arden was able to re-mail a total of seventeen (17) Notice Packets (including three (3) that were requested to be sent via email, one (1) that was requested to be sent by mail, four (4) to forwarding addresses, and nine (9) to addresses found in advanced address searches. *See* Peek Decl., ¶ 9.

As a result, as of April 28, 2022, 123 out of the 128 Class Members that Defendants provided addresses for received Notices. *See* Peek Decl., ¶ 10. Thus, only five Class Members that Defendants provided addresses for never received a Notice Packet, for a total undeliverable rate of approximately 4%, and a successful delivery rate of 96%. *See* Peek Decl., ¶ 10.

As detailed in Named Plaintiffs' Preliminary Approval Motion, the Gross Settlement Fund created on the Class Members' behalf totals $825,000.00, with the Net Settlement Fund made available to Class Members in the amount of $542,528.59, subject to Court-approval of each item

requested below. *See* Maguire Decl., ¶ 8.[1] According to the calculations provided by Arden, the summary of payments, if approved by the Court would be as follows:

| | |
|---|---|
| Attorneys' Fees | $247,500.00 |
| Attorneys' Litigation Expenses | $6,471.41 |
| Service Awards | $15,000.00 |
| Claims Administration Costs | $13,500.00 |

In total, Arden received 21 valid Claim Forms from Class Members. *See* Peek Decl., ¶ 11. As a result, a total of 21 Class Members are participating in the Settlement, representing a participation rate of 16.4% based on the 128 Class Members that received notice, claiming a total of $111,082.43 of the Net Settlement Fund, exclusive of the requested service awards. *See* Peek Decl., ¶ 14. Additionally, Arden has not received any requests for exclusion or objections to the class settlement. *See* Peek Decl., ¶¶ 12-13. The average award is $4,998.91 per Class Member and the highest award is $10,536.78. *See* Peek Decl., ¶ 14. The breakdown of the Net Settlement Fund is detailed in the Maguire Declaration and Peek Declaration. *See* Peek Decl., ¶ 14.

## III.    ANALYSIS

### A.    The Rule 23 Class Action Settlement is Fair, Adequate, and Reasonable

Federal Rule of Civil Procedure 23(e) "requires court approval for a class action settlement to ensure that it is procedurally and substantively fair, reasonable, and adequate" *Beckman v. KeyBank, N.A.*, 293 F.R.D. 467, 474 (S.D.N.Y. 2013) (citing Fed.R.Civ.P. 23(e)); *see Romero v. La Revise Assocs., LLC*, 58 F. Supp. 3d 411, 420 (S.D.N.Y. 2014) (citing *Joel A. v. Giuliani*, 218

---

[1] As explained in detail in the attorneys' fee section, Class Counsel is requesting approval of a lesser amount in attorneys' fees than as explained in the Preliminary Approval Motion and Supplement Letter.

F.3d 132, 138 (2d Cir. 2000) (holding that Federal Rule of Civil Procedure 23(e) requires court approval for a class action settlement to ensure that it is "fair, adequate, and reasonable, and not a product of collusion"). Specifically, a court "must carefully scrutinize the settlement to ensure its fairness, adequacy and reasonableness." *D'Amato v. Deutsche Bank*, 236 F.3d 78, 85 (2d Cir. 2001) (citation omitted).

Importantly "[c]ourts examine procedural and substantive fairness in light of the "strong judicial policy favoring settlements" of class action suits. *Beckman*, 293 F.R.D. at 474 (citing *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 116 (2d Cir. 2005)). "Absent fraud or collusion, [courts] should be hesitant to substitute [their] judgment for that of the parties who negotiated the settlement." *Id.* (collecting cases).

As explained in detail below, because this settlement is fair, reasonable, and adequate, the Court should approve it.

### 1.    Procedural Fairness

 "To determine procedural fairness, courts examine the negotiating process leading to the settlement." *Id.* (citing *Wal-Mart Stores, Inc.*, 396 F.3d at 116); *accord Morris v. Affinity Health Plan, Inc.*, 859 F. Supp. 2d 611, 617-18 (S.D.N.Y. 2012). The Second Circuit has held that there is "a presumption of fairness, reasonableness, and adequacy as to the settlement where 'a class settlement [is] reached in arm's-length negotiations between experienced, capable counsel after meaningful discovery.'" *McReynolds v. Richards-Cantave*, 588 F.3d 790, 803 (2d Cir. 2009) (quoting *Wal-Mart Stores, Inc.*, 396 F.3d at 116). To this point, where "the parties engaged in lengthy negotiations over an extended period of time as well as extensive discovery . . . covered by [the] settlement," this indicates that "[t]he settlement is procedurally fair, adequate, and not a product of collusion." *Hernandez v. Immortal Rise, Inc.*, 306 F.R.D. 91, 99-100 (E.D.N.Y. 2015).

Additionally, "courts encourage early settlement of class actions, when warranted, because early settlement allows class members to recover without unnecessary delay and allows the judicial system to focus resources elsewhere." *Beckman*, 293 F.R.D. at 474 (collecting cases); s*ee Hadel v. Gaucho, LLC*, 2016 WL 1060324, at *3 (S.D.N.Y. March 14, 2016) (encouraging early settlements where warranted); *Davenport v. Elite Model Mgmt. Corp.*, 2014 WL 12543814, at *1 (S.D.N.Y. Jan. 9, 2014) (recognizing that "[t]he law favors compromise and settlement of class actions"); *Hernandez v. Merrill Lynch & Co., Inc.*, 2012 WL 5862749, at *2 (S.D.N.Y. Nov. 15, 2012) (endorsing early settlement of wage and hour class action); *Castagna v. Madison Square Garden, L.P.*, 2011 WL 2208614, at *6 (S.D.N.Y. June 7, 2011) (commending Plaintiffs' attorneys for negotiating early settlement).

Here, as thoroughly explained in Named Plaintiff's Preliminary Approval Motion, the process leading up to settlement strongly indicates procedural fairness. *See* Dkt. No. 77, § II.A. While this case was initially referred to mediation with a member of the Southern District's mediation panel, efforts were unsuccessful and the parties subsequently agreed to conditional certification of a collective action, which the Court granted. Prior to distributing the Court-approved notice, however, Plaintiffs were informed that the Espinal Defendants sold the supermarket that was subject to the litigation and the parties could not proceed with distributing notice to the putative collective action members. Following the Espinal Defendants' production of the sale documents for Plaintiffs' review, Named Plaintiff filed an Amended Complaint to add the purchasing entities and their owner. While the parties ultimately agreed to stipulate to conditional certification a second time, before doing so, the parties agreed that private mediation to discuss class resolution was a superior option.

Prior to mediation, the Espinal Defendants provided the necessary time and pay records for the entire class that facilitated the parties' review and analyzation of the damages of the entire class. Based on the parties' ability to assess these damages, in conjunction with the risks and costs of continued litigation, the parties ultimately reached resolution in principle on behalf of the Class with the assistance of a mediator with extensive experience in employment matters involving collective and class actions. *See Saldana v. Middletown Car-G-Cam Uni Corp.*, 2015 WL 12591678, at *1 (S.D.N.Y. Sept. 23, 2015) (citation omitted) (recognizing that a presumption of fairness "is increased when a settlement is reached with the assistance of an experienced mediator"). The parties ultimately reduced the terms to a settlement agreement on behalf of the Class and filed the unopposed motion with the Court, which the Court approved on October 26, 2021.

As addressed in Plaintiffs' Supplemental Letter, due to deficiencies in the class list produced by Defendants, Plaintiffs moved to compel production of the information on December 3, 2021. During the Court's conference on the motion, the parties informed the Court that the Espinal Defendants discovered an additional thirty-two individuals that were part of the settlement that were not initially included in the settlement discussions. Based on this new information, Plaintiffs' counsel represented to the Court that the original calculation was not fair and adequate and requested more time for the parties to discuss the issue. As a result, the parties agreed to increase the settlement amount from $750,000 to $825,000, based on the calculations provided in the Supplement Letter.

In light of the many twists and turns associated with the ultimate resolution of this case, and Plaintiffs continued efforts to reach a fair and reasonable settlement on behalf of the Class, the settlement process overwhelmingly supports procedural fairness.

2.    **Substantive Fairness**

In addition to being procedurally fair, the Rule 23 Settlement also satisfies the substantive fairness factors that courts in the Second Circuit apply when determining whether final approval of a class action settlement is appropriate. *See Beckman*, 293 F.R.D. at 474 (citing *Grinnell*, 495 F.2d at 463). More specifically, in *Grinnell*, the Second Circuit held that courts should consider the following factors when evaluating a class action settlement for final approval:

> (1) the complexity, expense, and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the state of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; and (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation.

495 F.2d at 463 (citations omitted), *abrogated on other grounds by Goldberger v. Integrated Res. Inc.*, 209 F.3d 43 (2d Cir. 2000). As Plaintiffs have previously addressed each of the *Grinnell* factors (with the exception to "the reaction of the class to the settlement," Plaintiffs refer the Court to their evaluation in the Plaintiffs' Preliminary Approval Motion (*see* Dkt. No. 77, at § III.A.2-5).

"It is well-settled that the reaction of the class to the settlement is perhaps the most significant factor to be weighed in considering its adequacy." *Siddiky v. Union Square Hospitality Grp., LLC*, 2017 WL 2198158, at *4 (S.D.N.Y. May 17, 2017) (collecting cases). The Second Circuit has also emphasized that "[i]f only a small number of objections are received, that fact can be viewed as indicative of the adequacy of the settlement." *Wal-Mart Stores, Inc.*, 396 F.3d at 118 (citation omitted); *see Siddiky¸* 2017 WL 2198158, at *4 (finding it "markedly positive" that "the class members in [the] case were fully apprised of the terms of the settlement" and "[n]one objected

10

and only one opted out"); *Romero*, 58 F. Supp. 3d at 420 (citing *Wright v. Stern*, 553 F. Supp. 2d 337, 345 (S.D.N.Y.2008)) (finding that six opt-outs out of a class of 486 potential class members "indicates the class's general approval of the Settlement Agreement"); *Hernandez*, 306 F.R.D. at 100 (finding "[t]he fact that the vast majority of class members neither objected nor opted out is a strong indication of fairness") (internal quotations omitted); *see also Marshall v. Deutsche Post DHL*, 2015 WL 5560541, at *5 (E.D.N.Y. Sept. 21, 2015) (finding that reaction of the class favors settlement when "[n]ot a single member of the class objected to settlement, and only one class member has opted out of the class").

Moreover, "for due process to be satisfied, not every class member need receive actual notice [of the class settlement], as long as class counsel 'acted reasonably in selecting means likely to inform persons affected.'" *See Dupler v. Costco Wholesale Corp.*, 705 F. Supp. 2d 231, 248-49 (E.D.N.Y. 2010) (quoting *In re Adelphia Commc'ns Corp. Sec. Litig.*, 271 Fed. App'x 41, 44 (2d Cir. 2008)) (alterations in original) (finding notice reasonable and comporting with due process when 29.92% of a 922,316 person class never received actual notice). Indeed, "notice sent by mail to the last known address of the absent class member meets the due process requirement of notice through 'reasonable effort' even where numerous class members have since changed addresses and do not receive notice.'" *Stinson v. City of New York*, 256 F. Supp. 3d 283, 290 (S.D.N.Y. 2017) (quoting *In re Prudential Sec. Inc. Ltd. P'ships Litig.*, 164 F.R.D. 362 (S.D.N.Y. 1996)) (collecting cases); *see also, e.g., Hernandez*, 306 F.R.D. at 97 (approving as fair and reasonable notice mailed to only 109 out of 150 putative FLSA/NYLL class members, for which only 14.6% returned claim forms to become participating claimants, and granting final approval); *Alleyne v. Time Moving & Storage, Inc.*, 264 F.R.D. 41, 46-47 (E.D.N.Y. 2010) (in FLSA/NYLL class settlement, approving notice as fair with 16.47% undeliverable rate in 352-member class and granting final approval);

11

*Gonzalez v. City of New York*, 396 F. Supp. 2d 411, 418 (S.D.N.Y. 2005) (finding mailings reaching only one-third of potential class, "even without supplemental newspaper publications" constituted adequate notice); *In re W. Union Money Transfer Litig.*, 2004 WL 3709932, at *14 (E.D.N.Y. Oct. 19, 2004) (approving settlement where undeliverable notice rate was 45% because of "the length of the class period, the size and mobility of the Settlement Class, and the likelihood that some name and address information may not have been accurately provided or entered at the time").

Here, of the 128 Class Members that the Espinal Defendants provided addresses, 123 received notice of the instant settlement, establishing a successful delivery rate of 96%. Crucially, no Class Members opted-out and no Class Members submitted objections, which together overwhelmingly indicate the settlement's fairness and warrants recommendation of final approval. *See Wal-Mart Stores, Inc.*, 396 F.3d at 118 (finding that a small number of objections "can be viewed as indicative of the adequacy of the settlement"). Moreover, twenty-one (21) of the 128 Class Members, equaling 16.4%, elected to submit Claim Forms and participate in the settlement. While this class participation rate is not exceptional, it is line with the average participation rate in FLSA class action settlements. *See Hernandez*, 306 F.R.D. at 100 (finding that a 14.6% participation rate was "within the average range," as class settlements with claim form submissions "typically have a participation rate in the 10-15 percent range"); *Acevedo v. Workfit Medical LLC*, 187 F. Supp. 3d 370, 380 (W.D.N.Y. 2016) (noting that approximately twenty-one percent of class members opting into class settlement represented a "high participation rate"); *Zimmer Paper Prods. Inc. v. Berger & Montague, P.C.*, 758 F.2d 86, 92 (3d Cir. 1985) (approving class action settlement where only 12% of the class submitted a claim form).

Based on the participation rate, and the fact that no Class Members objected or opted-out of the settlement, this crucial *Grinnell* factor indicates the settlement's fairness.

**B.**       **The Court Should Approve the Settlement of the FLSA Claims**

In addition to Rule 23 settlements, settlements of FLSA claims also usually require court approval. *Cheeks*, 796 F.3d at 206-07. The standard "for approval of an FLSA settlement is lower than for a Rule 23 settlement" because an FLSA settlement does not implicate the same due process concerns as does a Rule 23 Settlement. *Quow v. Accurate Mech.*, 2018 WL 3368673, at *4 (S.D.N.Y. July 10, 2018) (citation omitted). "Typically, courts regard the adversarial nature of a litigated FLSA case to be an adequate indicator of the fairness of settlement." *Azogue v. 16 for 8 Hospitality LLC*, 2016 WL 441422, at *5 (S.D.N.Y. Aug. 19, 2016) (citation omitted). Furthermore, "[i]f the proposed settlement reflects a reasonable compromise over contested issues, the settlement should be approved." *Id.* at *5 (citation omitted).

Here, as detailed in Plaintiffs' Preliminary Approval Motion, the Supplement Letter, and *supra*, the "settlement was a result of contested litigation and arm's length negotiation," and the settlement terms are fair and appropriate. Moreover, because the case satisfies the *Grinnell* factors, the Court should approve it under *Cheeks* as well.

**C.**       **Service Awards**

"Service awards are common in class action cases and serve to compensate plaintiffs for the time and effort expended in assisting the prosecution of the litigation, the risks incurred by becoming and continuing as a litigant, and any other burdens sustained by the plaintiffs." *Hernandez*, 306 F.R.D. at 101 (citation omitted).  Indeed, "[i]t is important to compensate plaintiffs for the time they spend and the risks they take." *Id.*; *see Sierra v. Spring Scaffolding LLC*, 2015

WL 10912856, at *9 (E.D.N.Y. Sept. 30, 2015) (approving service awards of $10,000 and $7,500 to plaintiffs).

In cases where service awards are requested on behalf of "zealous class representatives in the prosecution of a class action suit," courts have granted amounts commensurate to the ones being requested here. *Sewell v. Bovis Lend Lease, Inc.*, 2012 WL 1320124, at *14 (S.D.N.Y. Apr. 16, 2012) (granting service awards in the amount of $15,000 and $10,000); *Capsolas v. Pasta Resources, Inc.*, 2012 WL 4760910, at *9 (S.D.N.Y. Oct. 5, 2012) (approving service awards in the amount of $20,000 and $10,000); *Willix v. Healthfirst, Inc.*, 2011 WL 754862, at *7 (E.D.N.Y. Feb. 18, 2011) (approving service awards of $30,000 and $15,000 as reasonable); *Duchene v. Michael Cetta, Inc.,* 2009 WL 5841175, at *3 (S.D.N.Y. Sept. 10, 2009) (approving an award of $25,000 as reasonable). In *Karic v. Major Automotive Companies, Inc.*, 2016 WL 1745037, at *8 (E.D.N.Y. Apr. 27, 2016), the court "[h]aving considered the involvement of the seven named plaintiffs with the discovery and settlement phases of [the] litigation," determined that awards of "$20,000 each is reasonable in light of the overall settlement." Furthermore, service awards have been found to be appropriate where "the named opt-ins were actively involved at all stages of the litigation, including conferring with counsel, and producing documents and data that aided in counsel's evaluation of the risks of the case." *Chen v. XpresSpa at Terminal 4 JFK LLC*, 2021 WL 4487835, at *8 (E.D.N.Y. Oct. 1, 2021).

Here, Named Plaintiff seeks a service award of $10,000 and Opt-in Plaintiff seeks a service award of $5,000, for a combined total of $15,000. Named Plaintiff commenced the action and provided Class Counsel with the information necessary to assert FLSA/NYLL wage claims on behalf of himself and on behalf of the hourly non-managerial employees that worked at his Food Universe location. In commencing the action as the sole named Plaintiff, Plaintiff Hurtado

14

assumed the attendant risks of doing so. *See Sewell*, 2012 WL 1320124, at *14 (finding service awards appropriate considering that "former employees [ ] face potential risks of being blacklisted as 'problem' employees").

While Named Plaintiff commenced the action, Opt-in Plaintiff joined the case at the beginning and was also instrumental in providing information necessary for Class Counsel to investigate and evaluate the claims. *See* Maguire Decl., ¶ 11. Named Plaintiff's and Opt-in Plaintiff's expended time, effort, and assistance with bringing this case from its inception to its successful resolution. *See* Maguire Decl., ¶ 12. Both provided all of the initial information vital to file both the initial and Amended Complaint. *See* Maguire Decl., ¶ 12. Additionally, Named Plaintiff participated in the mediation that ultimately led to the settlement in principle. *See* Maguire Decl., ¶ 12.

Importantly, these requested service awards are in line with service awards requested in similar cases. *See Reyes v. Altamarea Group, LLC*, 2011 WL 4599822, at *9 (S.D.N.Y. Aug. 16, 2011) (awarding total of $50,000.00 in service awards in $300,000.00 class settlement - - including three $15,000.00 awards); *Willix*, 2011 WL 754862, at *7 (granting multiple service awards - - one of $30,000.00, two $15,000.00 awards, and a $7,500.00 award - - for a combined total of $67,500.00); *Torres v. Gristede's Operating Corp.*, 2010 WL 5507892, at *8 (S.D.N.Y. Dec. 21, 2010) (awarding $15,000.00 service awards to fifteen separate plaintiffs, in addition to other awards).

Furthermore, the Class Members were notified of the exact amount of the service awards to Named Plaintiff and Opt-in Plaintiff in the Notice, and again, there were no objections or opt-outs, showing support for the awards. This supports approval of the service award sought here. *Flores v. Mamma Lombardi's of Holbrook, Inc.*, 104 F. Supp. 3d 290, 298 (E.D.N.Y. 2015)

15

(approving service award and noting that "no class member objected to the service awards"); *McLaughlin v. IDT Energy*, 2018 WL 3642627, at *15 (E.D.N.Y. July 30, 2018) (approving service awards noting significance of awards being "explicitly mentioned in the long-form notice sent to class members").

In light of these considerations, the service awards here are fair and reasonable and Plaintiffs respectfully request that the Court approve them.

### D.   Attorneys' Fees

#### 1.   The Percentage Method is the Preferred Method for Awarding Attorneys' Fees in Common Fund Cases in this Circuit

When a common fund is created as part of a settlement, the Second Circuit has recently reaffirmed that "the percentage method has the advantage of aligning the interests of plaintiffs and their attorneys more fully by allowing the latter to share in both the upside and downside risk of litigation." *See Fresno Cnty. Employees' Ret. Ass'n v. Isaacson/Weaver Family TArden*, 925 F.3d 63, 71 (2d Cir. 2019) (citation omitted); *Thornhill v. CVS Pharmacy, Inc.*, 2014 WL 1100135, at *3 (S.D.N.Y. Mar. 20, 2014) (collecting cases setting attorneys' fees at one-third of the settlement); *Emeterio v. A&P Restaurant Corp.*, 2022 WL 274007, at *9 (S.D.N.Y. Jan. 26, 2022) ("The trend in this circuit is toward the percentage method, which directly aligns the interests of the class and its counsel and provides a powerful incentive for the efficient prosecution and early resolution of litigation"). Still, to assess the reasonableness of a requested fee, courts usually "[a]pply[] the lodestar method as a cross check." *See Fresno Cnty. Employees' Ret. Ass'n*, 925 F.3d at 72 (citing *Goldberger*, 209 F.3d at 50) ("district courts should use the lodestar as a 'baseline' against which to cross-check a percentage fee"). Notably, "[a]lthough the Court has discretion to award attorneys' fees based on the lodestar method or percentage-of-recovery

method, in wage and hour class action lawsuits, public policy favors a common fund attorneys' fee award." *Azogue*, 2016 WL 4411422, at *6 (citation omitted).

> a.   *The Second Circuit recently found percentage of the gross settlement fund, rather than percentage of fund net expenses to be* <u>*fair and reasonable.*</u>

In *Kornell v. Haverhill Ret. Sys.*, 790 Fed. App'x 296, 298-99 (2d Cir. 2019), the Second Circuit, in a summary order, weighed the issue of calculating attorneys' fees in a class action settlement. Specifically, the Court considered whether such fees should be calculated based on a percentage of the gross settlement fund, or based on the settlement fund *net* of expense, and determined that the district court did not abuse its discretion by awarding class counsel a percentage based upon the gross settlement fund. *Id*. Noting that the touchstone in an attorneys' fee award analysis was reasonableness, the Court held that because Federal Rule of Civil Procedure 23(h) does not bar one method or the other, "[a] district court has discretion to award Class Counsel a percentage of the gross class action settlement fund, provided that its award of attorneys' fees is reasonable." *Id*. (citing *Powers v. Eichen*, 229 F.3d 1249, 1258 (9th Cir. 2000)); *see also Masters v. Wilhelmina Model Agency, Inc.*, 473 F.3d 423, 437 (2d Cir. 2007) (explaining that a district court can avoid a "windfall" by adjusting the percentage awarded in order to come up with a fee it deems reasonable in light of the *Goldberger* factors).

Moreover, the Second Circuit also recently clarified that "[w]hile in some cases the proportion of fees may be relevant in considering the reasonableness of an award (for example, the multi-million dollar securities class action involving a common fund, often cited by district courts in evaluating fee requests, *see Goldberger*, 209 F.3d at 50-51), there is no explicit limit on attorneys' fees in FLSA actions and district courts should not, in effect and practice, implement such a limit." *Fisher v. SD Protection Inc*, 948 F.3d 593, 600 (2d Cir. 2020). The Court additionally

explained that "[i]n most FLSA cases, it does not make sense to limit fees to 33% of the total settlement [as] FLSA cases often involve ordinary, everyday workers who are paid hourly wages and favorable outcomes frequently result in limited recoveries." *Id*. Thus, as the Second Circuit has "long held," and reiterated in *Fisher*, "a fee award may not be reduced merely because the fee would be 'disproportionate to the financial interest at stake in the litigation.'" *Id*. at 604 (quoting *Kassim v. City of Schenectady*, 415 F.3d 246, 252 (2d Cir. 2005)).

Furthermore, as one court in the Eastern District held when determining the correct method on an opposed application for attorneys' fees in a settlement structure similar to this one, "when using the percentage method, the proper number against which attorney's fees are measured is the amount of the entire fund created by the efforts of counsel, not the amount actually claimed or collected by the class." *Alleyne v. Time Moving & Storage Inc.*, 264 F.R.D. 41, 59 (E.D.N.Y. 2010). The court further opined that "[i]n choosing the proper baseline for calculation of fee percentage, our Circuit case law directs courts to focus on fairly compensating counsel for work actually performed, given that 'the entire fund, and not some portion [of it], is created through the efforts of counsel at the instigation of the entire class,' [and] an allocation of fees by percentage should therefore be awarded on the basis of the total funds made available, whether claimed or not.'" *Id*. (quoting *Masters*, 473 F.3d at 437). The court concluded that "[t]he value of legal advice rendered but not heeded is undiminished by its rejection . . . [n]or is the value of legal service rendered in creation of a settlement fund diminished by the failure of beneficiaries to cash in, regardless of what happens to the surplus." *Id*. Moreover, as one court in the Southern District held:

> Courts in the Second Circuit tend to grant class counsel a percentage of any settlement, rather than utilize the 'lodestar method' (multiplying the hours reasonably expended by a reasonable hourly rate), because the percentage method aligns the interests of the class

> and its counsel and provides a powerful incentive for the efficient
> prosecution and early resolution of litigation. The lodestar method,
> on the other hand, disincentivizes early settlements, tempts lawyers
> to run up their hours, and 'compels district courts to engage in a
> gimlet-eyed review of line-item fee audits.'

*Siddiky*, 2017 WL 2198158, at *8 (collecting cases) (quoting *Raniere v. Citigroup, Inc.*, 310 F.R.D. 221, 220 (S.D.N.Y. 2015).

Here, although the Settlement Agreement, Supplemental Letter, and Notice provide that Plaintiffs' counsel will be seeking $270,308.97 in attorneys' fees, representing approximately one-third of the gross settlement, Class Counsel is requesting thirty percent (30%) of the gross settlement fund, $247,500.00. The fact that no Class Member objected and/or opted out when notified of the *higher* number of attorneys' fees provided in the Notice further supports this, warranting the Court's approval. *See Azogue*, 2016 WL 4411422, at *8 (emphasizing that "[n]o Class Member objected to the Class Counsel's request for 33.3% of the Fund, which also provides support for Class Counsel's fee request"); *Henry v. Little Mint, Inc.*, 2014 WL 2199427, at *5 (S.D.N.Y. May 23, 2014) (approving 33.3% where "[n]one of the Class Members submitted a Request for Exclusion and no Class Member objected to the Settlement").

　　　　　b.　　*The Goldberger Factors Support an Award of 30% of the Gross Fund Created*

"Reasonableness is the touchstone for determining attorneys' fees." *Asare v. Change Grp. of New York, Inc.*, 2013 WL 6144764, at *18 (S.D.N.Y. Nov. 13, 2013). It is well-established law that "[t]o determine whether a fee is reasonable, courts look to the factors identified by the Second Circuit in *Goldberger*." *Siddiky*, 2017 WL 2198158, at *9 (citing *Goldberger*, 209 F.3d at 50). Those factors are: (1) the time and labor expended by counsel; (2) the magnitude and complexities of the litigation; (3) the risk of litigation; (4) the quality of representation; (5) the requested fee in relation to the settlement; and (6) public policy considerations. *Id*. at 50. "Once that initial

computation has been made, the district court may, in its discretion, increase the lodestar by applying a multiplier based on other less objective factors, such as the risk of the litigation and the performance of the attorneys." *Pucciarelli v. Lakeview Cars, Inc.*, 2017 WL 2778029, at *2 (E.D.N.Y. June 26, 2017) (citation omitted).

In the present case, all of the *Goldberger* factors weigh in favor of awarding Class Counsel its requested fees of 30% of the gross settlement fund.

### i. *The Firm's Time and Labor*

Class Counsel, Stevenson Marino LLP ("Stevenson Marino" or "the Firm"), spent significant effort to obtain the $825,000.00 settlement fund. Prior to the commencement of litigation and throughout the unusual procedural history of this case, Stevenson Marino spent expended substantial time on behalf the Class Members to secure this result. Even though this case was settled prior to formal discovery, the sale of the Espinal Defendants' supermarket to the Fernandez Defendants resulted in unique issues that required Class Counsel to pursue additional necessary parties to ensure Plaintiffs' rights were protected. Indeed, the initial agreement to stipulate to conditional certification with the Espinal Defendants was forestalled by the sudden issue that the current employees of the Food Universe supermarket were no longer the employees of the Espinal Defendants. Following review of the sale documents and formulation of an Amended Complaint, discussions on resolution with a new set of Defendants needed to take place, which created additional hurdles as the Espinal Defendants and Fernandez Defendants both raised issues of whether indemnification in FLSA/NYLL cases was proper. This issue ultimately resulted in a pre-motion conference letter as the Espinal Defendants anticipated moving to dismiss the Fernandez Defendants' counterclaims. *See* Dkt. Nos. 61, 62.

The issues concerning the Class Members' information persisted even after the parties' initial resolution. In order to ensure that Plaintiffs possessed all of the information necessary to

provide notice to the class members, Plaintiffs were required to engage in multiple conversations, examine multiple productions of class lists, and ultimately move to compel production of documentation regarding the class information. The issues concerning which entities possessed the requisite information persisted until the parties were finally able to track down sufficient information to send notice to 128 of the 136 Class Members, with 123 of the Class Members receiving notice.

In performing the above tasks, the Firm expended approximately 287.1 hours of attorney time in this matter as of May 25, 2022, which were recorded by contemporaneously maintained time records and which produces an aggregate lodestar of $114,840.00.[2] This amount of time expended is reasonable in light of the other Rule 23 class settlements involving wage and hour claims where significant discovery has been completed with a result similar to this one. *See Manley v. Midan Rest. Inc.*, 2017 WL 1155916, at *8 (S.D.N.Y. Mar. 27, 2017) (finding 560 hours reasonable where "plaintiffs' counsel conducted an investigation into plaintiffs' claims and defendants' business practices, reviewed documents, interviewed the named and opt-in plaintiffs, represented plaintiffs at a mediation, successfully negotiated a settlement with defendants and proceeded efficiently through the litigation"). Moreover, the requested fee is not based solely on time and effort already expended; it is also meant to compensate the Firm for time that it will be required to spend in its continued efforts administering the settlement post submitting the instant Motion, after final approval, and responding to further inquiries from Class Members. *See Beckman*, 293 F.R.D. at 481 (noting that "[i]n wage and hour cases, Class Counsel is often called upon to perform work after the final approval hearing, including answering class member questions, answering questions from the claims administrator, and negotiating and sometimes

---

[2] The requested rates used for this calculation are explained below and in the Maguire Decl., ¶¶ 25, 31, 38.

litigating disagreements with defendants about administering the settlement and distributing the fund").

In the present case, the Firm will need to oversee and monitor the payment to the Class Members by the Claims Administrator. There will likely be additional work to deal with any issues of providing tax forms, late checks, and potentially respond to inquiries from the Class Members or the administrator. Accordingly, the Firm's lodestar will only increase.

ii.     *The Magnitude and Complexities of the Litigation*

In evaluating the second *Goldberger* factor, "[t]he size and difficulty of the issues in a case are significant factors to be considered in making a fee award." *Sukhnandan v. Royal Health Care of Long Island LLC*, 2014 WL 3778173, at *10 (S.D.N.Y. July 31, 2014). To that end, "[a]mong FLSA cases, the most complex type is the hybrid action brought here, where state wage and hour violations are brought as an opt out class pursuant to Rule 23 in the same action as the FLSA opt in collective action pursuant to 29 U.S.C. § 216(b)." *Manley*, 2017 WL 1155916, at *8 (collecting cases). In *Bijoux v. Amerigroup N.Y., LLC*, 2016 WL 2839797, at *1 (E.D.N.Y. May 12, 2016), the court awarded one-third of the total gross settlement fund in attorneys' fees as "justified by the work that Class Counsel did negotiating the settlement and conducting the litigation, the ultimate recovery, and the risk that Class Counsel undertook in bringing the claims."

In the present action, the Firm pursued and secured a substantial class-wide settlement on behalf of 128 people, with 21 individuals set to receive significant settlement payments. While the wage and hour issues may not have been the most complex, issues here concerning liability were anything but straight-forward because of the sale of the Espinal Defendants' supermarkets to the Fernandez Defendants. This especially complicated the prospects of recovery, as the Espinal Defendants no longer had the supermarkets to generate income from, and the Fernandez Defendants would argue that there existed not successor liability. An unfavorable decision would

22

have made settlement extremely limited. Especially considering the financial nature of the supermarket industry, where profit margins are widely known to be modest, the complexities created in light of the sale add to the reasonableness of the settlement. In light of the forgoing, the Firm's request for 30% of the gross fund, less than the customary fee of one-third, is equally reasonable.

*iii.*      <u>The Risk of Litigation</u>

Also, as previously discussed in connection with Plaintiffs' Preliminary Approval motion, the risk of litigation, considering the settlement result, warrants the Firm's requested fee award. Indeed, "[d]espite the most vigorous and competent of efforts, success is never guaranteed." *Grinnell*, 495 F.2d at 471. Considering that financial situations are even more uncertain due to the Covid-19 pandemic, Class Counsel's efforts will ensure meaningful settlement funds reach the participating Class Members in a time of great economic uncertainty.

Here, Class Counsel should be rewarded for securing this settlement despite the risks assumed, as the Firm undertook the matter on a contingency basis, *see* Maguire Decl., ¶ 21, and achieved a settlement following substantial time and effort undertaken in this matter.  Additionally, the Firm "risked time and effort and advanced costs and expenses, with no ultimate guarantee of compensation." *Kochilas v. National Merchant Servs., Inc.*, 2015 WL 5821631, at *9 (E.D.N.Y. Oct. 2, 2015).

Based on the reasonableness of the award in light of the significant risk, the Firm achieved an excellent result. This third *Goldberger* factor weighs in favor of the Firm's requested fee award.

*iv.*      <u>The Quality of the Representation</u>

"To determine the quality of the representation, courts review, among other things, the recovery obtained and the backgrounds of the lawyers involved in the lawsuit." *Manley*, 2017 WL 1155916, at *9; *see Bijoux*, 2016 WL 2839797, at *1 (awarding one-third of the gross fund in

23

attorneys' fees and noting that class counsel were "experienced class action employment lawyers with good reputations among the employment law bar"). Indeed, "[t]he quality of representation is best measured by results." *Goldberger*, 209 F.3d at 55.

In the present case, "Class Counsel's skill and experience was directly responsible for this favorable settlement reached in an efficient manner without great Court intervention at an early stage of the litigation." *Asare*, 2013 WL 6144764, at *21. Based on the results achieved and the Class Members' favorable reaction, it is clear that the "diligent work performed by Class Counsel in litigating and settling this matter demonstrates their commitment to the Class Members and their interests." *Id.*

Stevenson Marino has been appointed Class Counsel in several other similar matters based upon the Firm's experience. Recent cases that courts have appointed Stevenson Marino as class counsel are listed in the Maguire Declaration, ¶¶ 19, 22, 35. This factor strongly weighs in favor of the Firm's requested fee award.

<em>v.        The Requested Fee in Relation to the Settlement</em>

The Second Circuit recently held in *Fisher* that "[n]either the text nor the purpose of the FLSA . . . supports imposing a proportionality limit on recoverable attorneys' fees." 948 F.3d at 603 (finding that "[b]y implementing a percentage cap on attorneys' fees in FLSA actions, district courts impede Congress's goals by discouraging plaintiffs' attorneys from taking 'run of the mill' FLSA cases where the potential damages are low and the risk of protracted litigation high"). Nonetheless, should this Court still analyze the proportion of Class Counsel's requested fee as compared to the Gross Settlement Fund (or even the amount of the Net Settlement Fund claimed by Class Members), courts do so to ensure that the percentage awarded does not constitute a "windfall." *Asare*, 2013 WL 6144764, at *21. Under the Settlement Agreement here, the Parties agreed that, subject to Court approval, Class Counsel would receive $275,000.00 as attorneys' fees

24

and costs, representing one-third of the total Gross Settlement Fund. Class Counsel is now requesting attorneys' fees at a reduced amount of 30%, which is $247,500.00.

Class Counsel's requested thirty percent is less than one-third, even though one-third of the total settlement fund is arguably the standard in this Circuit. See e.g., *Kochilas*, 2015 WL 5821631, at *8 (awarding one-third of the settlement fund as "consistent with the norms of class litigation in this circuit"); *Hernandez*, 306 F.R.D. at 102 (awarding 31% of the settlement fund); *Azogue*, 2016 WL 4411422, at *6 (awarding one-third fees based on $170,000 reversionary settlement as "reasonable and consistent with the norms of class litigation in this circuit"); *Lizondro-Garcia v. Kefi LLC*, 2015 WL 4006896, at *10 (S.D.N.Y. July 1, 2015) (awarding one-third fees based on $315,000 settlement with informal discovery); *Ceka v. PBM/CMSI Inc.*, 2014 WL 6812127, at *1 (S.D.N.Y. Dec. 2, 2014) (approving one-third fees based on $500,000 settlement with unclaimed funds reverting to defendants); *Flores v. One Hanover*, 2014 WL 2567912, at * 1 (S.D.N.Y. June 9, 2014) (awarding one-third fees based on $600,000 settlement with informal discovery); *Guaman v. Ajna-Bar NYC*, 2013 WL 445896, at *1 (S.D.N.Y. Feb. 5, 2013) (awarding one-third fees based on $250,00 settlement with informal discovery).

Thus, the requested fee of 30% of the gross settlement fund is reasonable in relation to the settlement.

### *vi.* *Public Policy Considerations*

"Fee awards in wage and hour cases are meant to encourage members of the bar to provide legal services to those whose wage claims might otherwise be too small to justify the retention of able, legal counsel." *Beckman*, 293 F.R.D. at 477 (internal quotations omitted). "Where relatively small claims can only be prosecuted through aggregate litigation, 'private attorneys general' play an important role." *Kochilas*, 2015 WL 58216, at *8 (internal quotations omitted). "Adequate

compensation for attorneys who protect wage and hour rights furthers the remedial purposes of the FLSA and the NYLL." *Id.* (collecting cases).

In the present matter, Class Counsel agreed to assume the risk of time, effort, and advanced costs "with no ultimate guarantee of compensation" by representing the Plaintiffs on a full contingency basis. *See* Maguire Decl., ¶ 28. The favorable reaction by the Class Members confirms their satisfaction with Class Counsel's result, as the amount of requested attorneys' fees was provided in the Notices, informing the Class Members of the requested fees and their ability to exclude themselves or to object to the settlement if they disagreed or otherwise chose not to participate. *See Azogue*, 2016 WL 4411422, at *7 (approving counsel's request for 33.33% of the Fund, noting fee requested was included in notice to class members, and observing that favorable class reaction "provides support for Class Counsel's fee request").

Based on the foregoing, all of the *Goldberger* factors weigh in favor of the requested fee award.

### 2.    The Lodestar Cross-Check Further Supports an Award of Thirty Percent of the Settlement Fund.

#### a.    *The Lodestar Multiplier is Within a Reasonable Range.*

Class Counsel's lodestar of 2.15 falls "closely within the ranges recently awarded in comparable cases in this circuit." *Ramos v. Nikodemo Operating Corp.*, 2017 WL 11508016, at *8 (E.D.N.Y. Aug. 7, 2017); *See, e.g., Pucciarelli*, 2017 WL 2778029, at *2 (noting that courts "have routinely found that doubling the lodestar yields a reasonable fee in the context of FLSA settlements" and listing cases applying multipliers ranging from 1.94 to 2.28); *Hall v. ProSource Technologies, LLC*, 2016 WL 1555128, at *11-14 (E.D.N.Y. Apr. 11, 2016) (applying multiplier of 2.08 to adjusted lodestar calculation in case involving Class Counsel); *Mills v. Capital One, N.A.*, 2015 WL 5730008, at *10 (S.D.N.Y. Sept. 30, 2015) (reducing 4.41 multiplier of adjusted

lodestar calculation to 2.21); *Sakiko Fujiwara v. Sushi Yasuda Ltd.*, 58 F. Supp. 3d 424, 437 (S.D.N.Y. 2014) (reducing 3.8 multiplier of adjusted lodestar calculation to 2.28 in case involving Class Counsel). Some courts have "regularly award[ed] lodestar multipliers from 2 to 6 times the lodestar." *Morris*, 859 F. Supp. 2d at 623 (awarding multiplier of 3.04); *see also Fleisher v. Phoenix Life Ins. Co.*, 2015 WL 10847814, at *18 (S.D.N.Y. Sept. 9, 2015) (awarding multiplier of 4.87); *Capsolas v. Pasta Res., Inc.*, 2012 WL 4760910, at *9 (S.D.N.Y. Oct. 5, 2012) (awarding multiplier of 3.96); *see also, e.g., Toure v. Amerigroup Corp.*, 2012 WL 3240461, at *5 (E.D.N.Y. Aug. 6, 2012) (awarding multiplier of 3.53); *Davis v. J.P. Morgan Chase & Co.*, 827 F. Supp. 2d 172, 184-186 (W.D.N.Y. 2011) (awarding multiplier of 5.3); *Khait v. Whirlpool Corp.*, 2010 WL 2025106, at *8-10 (E.D.N.Y. Jan. 20, 2010) (awarding multiplier of 3.3); *Maley v. Del Global Technologies Corp.*, 186 F. Supp. 2d 358, 371 (S.D.N.Y. 2002) (finding "the modest multiplier of 4.65 [ ] fair and reasonable.").

Here, as a cross-check, when calculated pursuant to the lodestar, Class Counsel's attorney's fees as of this submission are $114,840.00 in this matter, representing a 2.15 multiplier. This is well within the range of reasonable multipliers that courts within the Second Circuit approve, as described above. Additionally, as discussed *supra*, Class Counsel's obligation to the Class Members is not over. Indeed, Class Counsel has a continuing obligation to "represent the Class during the settlement approval process and the disbursement phase" although they will not make a supplemental fee application or seek further payment. *Kochilas*, 2015 WL 5821631, at *9. Accordingly, the Firm's lodestar will increase, and the requested multiplier will correspondingly decrease.

Moreover, courts in this Circuit have continued to follow the common practice of awarding one-third of the settlement fund in wage and hour actions, including awarding multipliers much

higher than two. *See, e.g., Hadel*, 2016 WL 3647600, at *1 (granting multiplier of 5); *Puglisi v. TD Bank, N.A.*, 2015 WL 4608655, at *1 (E.D.N.Y. July 30, 2015) (approving one-third of a $9,900,000 gross settlement fund, representing a 4.8 multiplier, and distinguishing case from, *inter alia*, *Fujiwara*); *Flynn v. N.Y. Dolls Gentlemen's Club*, 2015 WL 3916161, at *1 (S.D.N.Y. April 28, 2015) (granting 4.5 multiplier); *Ceka v. PBM/CMSI Inc.*, 2014 WL 6812127, at *1 (S.D.N.Y. Dec. 2, 2014) (awarding 3.36 multiplier).

Based on the foregoing, the lodestar multiplier of 2.15 is reasonable and further supports Class Counsel's fee request of $247,500.00.

> b.   *The Firm's rates used to calculate the lodestar are fair and reasonable.*

"Courts in this District have determined in recent cases that an hourly fee ranging from $250.00 to $450.00 is appropriate for experienced litigators in wage-and-hour cases." *Darby v. Sterling Home Care, Inc.*, 2020 WL 29932, *4 (S.D.N.Y. Jan 2, 2020) (citing *Fujiwara*, 58 F. Supp. 3d at 437. Interestingly, the court in *Darby*, as well as many other courts, are relying upon a case decided in 2014 for the hourly wages. In light of fact that eight years have passed, along with the fact the country is currently experiencing record inflation, such rates seem to not reflect these economic factors. In *Almond v. PJ Far Rockaway, Inc.*, 2018 WL 922184, at *2 (E.D.N.Y. Feb. 15, 2018), the Honorable Judge Block noted that "attorney's fees, like other goods and services, increase in cost with inflation." Based on this theory of inflation with the passage of time, Judge Block determined that $450 per hour was the reasonable rate in that case within the Eastern District. *Id*.

As of the date of the filing of this motion for approval, it is widely reported that inflation in the United States is currently at a 40-year high, with a rate of approximately 8% *over the last*

*twelve months.*[3] This is especially so considering this is not a contested fee application, which would understandably require a different analysis because "the degree of judicial scrutiny naturally declines." *Encalada v. Baybridge Enters. Ltd.*, 2014 WL 4374495, at *1 (E.D.N.Y. Sept. 2, 2014).

Regarding how Class Counsel calculated the Firm's lodestar, the rates and experiences of the attorneys who worked on this matter are described in the Maguire Decl., ¶¶ 22-46. Class Counsel's contemporaneous billing records are annexed to the Maguire Decl., ¶ 20, **Exhibit 1**. For the foregoing reasons, Class Counsel's request for $247,500.00, or 30% of the gross settlement fund, is reasonable.

### E.   <u>Litigation Expenses</u>

Counsel should be awarded expenses that are "necessary and were directly related to the results achieved." *Siddiky*, 2017 WL 2198158, at *12 (citation omitted). Class Counsel's costs and disbursements for this case are $6,471.41. *See* Maguire Decl., ¶ 14. This includes costs for the filing fee, service, postage, mediation, and translation of documents. *See id*. Plaintiffs attach a copy of Class Counsel's Litigation Expenses to the Maguire Declaration as **Exhibit 2**.[4]

### F.   <u>Claims Administrator's Fees and Costs</u>

Arden requests reimbursement for its fees and future costs in the amount of $13,500.00. *See* Peek Decl., ¶ 9. This is far less than what courts have approved for claims administration costs

---

[3] U.S. Bureau of Labor Statistics, https://www.bls.gov/opub/ted/2022/consumer-prices-for-food-up-7-9-percent-for-year-ended-february-2022.htm (last visited May 10, 2022); Brookings Institute, https://www.brookings.edu/blog/up-front/2022/03/11/inflation-in-america-experts-react-to-the-latest-cpi-release (last visited May 10, 2022); Market Watch, https://www.marketwatch.com/story/coming-up-consumer-price-index-11644498273 (last visited May 10, 2022).

[4] All of these costs were necessarily incurred in the course of this litigation, and are the types of unreimbursed costs incurred that courts routinely approve in settlements of FLSA and NYLL class action cases. *See, e.g., Febus v. Guardian First Funding Grp., LLC*, 870 F. Supp. 2d 337, 341 (S.D.N.Y. 2012).

in similar cases. *Siddiky*, 2017 WL 2198158, at *12 (approving claims administration fess of $33,500.00 and noting that "[c]ourts within this district have awarded up to $50,000.00 for the settlement claims administrator"). More information on Arden is supplied in the Peek Declaration.

## IV.   **CONCLUSION**

For the reasons stated herein, respectfully, this Court should grant final approval of the settlement, authorize the distribution of settlement checks to the 21 Class Members who are participating in this Settlement, representing their share of the Settlement Fund, approve the requested service awards, attorneys' fees, and expenses, dismiss the case with prejudice, and enter a Final Order. Lastly, the Court should retain jurisdiction over the construction, interpretation, implementation, and enforcement of the Parties' Settlement and distribution of the settlement funds. Plaintiffs have attached a Proposed Order as **Exhibit 3** to the Maguire Declaration.

Dated: New York, New York
      May 25, 2022

Respectfully submitted,

Stevenson Marino LLP
*Attorneys for Plaintiffs*
105 Maxess Road, Suite 124
Melville, New York 11747
Tel. (212) 939-7229

Jeffrey R. Maguire
